FREDERIC C. LEUBUSCHER, AS EXECUTOR OF THE ESTATE OF ROBERT SCHALKENBACH, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31405.   Promulgated December 31, 1930.

*Frederic C. Leubuscher* pro se.
*Ralph S. Scott, Esq.*, for the respondent.

1024

OPINION.

STERNHAGEN: In the determination of the decedent's net estate subject to the estate tax imposed by Title III, Revenue Act of 1924, the respondent has disallowed three deductions aggregating $212,-988.43 claimed by the estate under section 303 (a)(3), which is as follows:

SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(3) The amount of all bequests, legacies, devises, or transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. If the tax imposed by section 301, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes; \* \* \*

1. The residuum which was bequeathed by the forty-first provision of the will is taken by the parties without dispute to be

$202,988.43. The corporation was formed pursuant to·the will and there is no suggestion that its organization and operations are other than in harmony with the intendment of the will. It is essential, therefore, that both the will and the charter be examined, together with the other evidence, to determine whether the organization and operations of the corporation are exclusively for the purposes enumerated in the statute. The bequest is only deductible when both the organization and operations concur in fulfilling the statutory purposes, *William T. Bruckner et al., Trustees*, 20 B. T. A. 419, and then only when the purposes are confined " exclusively " to those expressly described in the statute. *Eagan* v. *Commissioner*, 43 Fed. (2d) 881; reversing 17 B. T. A. 694.

The will directs that a corporation be formed to carry out the " above stated objects of this trust." The corporation formed is to expend the legacy and its accretions " for teaching, expounding and propagating the ideas of Henry George." These functions of the corporation are expressly set forth as a method of realizing the fulfillment of the testator's underlying belief that the principles of George's " Progress and Poverty " should be enacted into law. This is the prevailing purpose of the bequest and the entire forty-first section must be read as an attempt to effectuate it. Whatever might be said of the phrase " teaching, expounding and propagating the ideas of Henry George," if it stood alone to denote the Foundation's purpose, would be of no significance because the phrase is but a part of the section and the rest is no less important and clear. Read in its entirety, the will shows an intent and purpose not only to educate, but also, and perhaps more so, to bring about legislation. To fulfill this purpose, the corporation was organized, not only to disseminate the ideas of Henry George, have them discussed and considered, and otherwise to educate the people; but also " to assist in all proper ways to establish the same in practical operation of law."

Although the terms " charitable " and " educational " are hardly definitive and their limits are yet to be determined, this much has been decided, that a legislative program is outside the intendment of the statute, and, having it, a corporation can not claim an exclusively educational or charitable purpose. *Slee* v. *Commissioner*, 42 Fed. (2d) 184; affirming 15 B. T. A. 710; cf. *Bertha Poole Weyl*, 18 B. T. A. 1092 (now on review).

The corporation, it is true, upon its organization, immediately determined not to participate in political campaigns and to refrain from lobbying, and has adhered to that determination. Its operations up to the present time have, according to the evidence, been confined to education in colleges and libraries. So if the purpose and extent of its operations during any period of time were the criterion, it might be within the statute. But this is not enough.

Both the organization and operations must be confined; and while, in case of ambiguous or obscure language to state purpose, the operations may help by providing a practical construction, they can not override language otherwise clear. *Eagan* v. *Commissioner, supra.*

The reason for this is quite apparent. The deduction is a single event. It applies only in the computation of the estate tax. Once allowed in a final determination, the inquiry is at an end. But the corporation's activities are only restricted by its charter and may be at any time broadened at the will of the directors within its charter purposes. Unless the statutory deduction is based on the corporation's purpose as well as its operations, a new board could later decide to engage in noneducational or noncharitable operations, and thus to use the deducted amount to further a purpose outside the favored classes and frustrate the legislative intent. The existence of the power defeats the deduction, *Schoenheit* v. *Commissioner,* 44 Fed. (2d) 476.

Our opinion is, therefore, that the Commissioner correctly disallowed the deduction. But it is necessary to consider some of the arguments advanced by respondent to support the disallowance.

It is argued that because some of the books were sold, even though to colleges and universities, this gives a commercial aspect to the corporation's activities which keeps it outside the statutory category. The sales were not for profit, but were entirely within the scope of decedent's purpose and the corporation's plan. As they were but the means adopted for the fulfillment of the purpose and function of the bequest, the receipt of a price does not destroy deductibility, if the bequest is otherwise deductible. *Trinidad* v. *Sagrada Orden de Predicadores,* 263 U. S. 578; *Unity School of Christianity,* 4 B. T. A. 61.

Respondent urges that the subject of Henry George's ideas is " bitterly partisan," that the single tax " is a step toward the goal of socialism " and therefore " in some respects is working against the present economic order," and that " the theory sponsored by the Foundation, of its very nature, is controversial and is thought by many to be highly inimical to the present order." It is said, after citing *Bertha Poole Weyl,* 18 B. T. A. 1092 (now pending on review), " that Congress did not intend to include in the category of educational institutions those organizations which disseminate information not only controversial but opposed to the present economic scheme," and it is submitted by respondent " that if the word [educational] is to be used in any restricted sense, it should be interpreted so as not to foster and encourage institutions of learning which advocate economic changes which are directly at odds with existing economic theories upon which society is founded in this country and which pervade our system of Government."

The inferences and conclusions thus presented rest upon assumptions as to the significance and effect of Henry George's ideas which are not supported by the evidence. Vague as it may be to say that they involve "a step toward socialism" or a change in the present social or economic order, the testimony is categorically that they do not; that their adoption would require change only in the machinery of taxation to adapt it to a new incidence of tax; that this may be no more drastic than the adoption of an income or other plan of tax; and that its effect outside of the revenues might be no more immediate than any other change in tax. There is evidence that the ideas of Henry George have been embodied in the land taxes of Pittsburgh, Pa., for ten years. The evidence also is that no part of the Foundation's operations is devoted to political agitation.

Professor Dewey, whose eminence as an educator is well recognized, testified that "no man, no graduate of a higher educational institution, has a right to regard himself as an educated man in social thought unless he has some first-hand acquaintance with the theoretical contribution of this great American thinker." Thus, like the classics, the ideas of Henry George may have an educational significance which may be recognized wholly apart from their social or political validity. Perhaps no one would doubt the deductibility of a bequest to a similar foundation to teach, expound and propagate the ideas of Plato or to promote the distribution of copies of "The Republic," irrespective of the extent to which their adoption might modify our social structure. On the other hand, it would clearly be necessary to stop short of allowing the deduction of bequests to propagate the one side or the other of the current political question of the repeal of the Eighteenth Amendment to the Constitution. Between the extremes the deduction must turn on the evidence in each case. The fact that there may be differences of opinion about the wisdom or practicability of Henry George's ideas—that the subject is controversial—does not serve to render the teaching and spreading of knowledge about it other than education.

But it is the respondent's ultimate determination of deficiency which is before us and not his justification, *Hurwitz* v. *Commissioner*, 45 Fed. (2d) 780, and the determination as to this deduction is sustained because the power to engage in legislative and other noneducational operations deprives the corporation of the exclusively educational or charitable character required by the statute.

2. The petitioner contends that the bequest of $5,000 to the Manhattan Single Tax Club is a proper deduction under section 303 (a) (3), and groups the argument as to this with that made to support the legacy to the Foundation. The facts, however, are different, although they lead to the same conclusion. The question whether a corporation is organized and operated exclusively for purposes de-

scribed in the statute requires, as we have said, consideration of the stated purposes of its organization as they appear in the charter and its actual operations, all of which must be exclusively confined to the purposes recognized. *William T. Bruckner et al., Trustees, supra.* As stated in the certificate, the purposes include the advocacy of Henry George's doctrines and the promotion of social intercourse " among single tax people." Clearly this expressed purpose of organization is not exclusively charitable, scientific, literary or educational, irrespective of how narrowly the corporation may at any given time restrict its operations; and it is unnecessary to consider whether the evidence shows that the corporation has in fact been operated within the restrictions of the statute. The deduction of this bequest was, in our opinion, correctly denied by respondent.

3. Respondent admits that the School for Printers' Apprentices is a corporation organized and operated exclusively for educational purposes, but contends that some of its net earnings may inure to the benefit of a private stockholder or individual and therefore that the bequest to the School of $5,000 may not be deducted. This contention is attempted to be supported by the provision of the Constitution and By-laws of Typographical Union Number Six, which is set forth as part of Article II, paragraph 3, of the rules of the School. But this provision says nothing about a distribution of net earnings. It seems to provide for a reversion of excessive contributions made by the Employing Printers' Section and Typographical Union Number Six. Nowhere is there a provision for a distribution of net earnings, but, on the contrary, paragraph 6 of the rules indicates that a distinction is recognized between contributions and tuition fees, and requires that the latter shall all be devoted to school purposes. In fact there have been no net earnings, and in ordinary course could be none; and if there were, it is difficult to see how they inure to the benefit of a stockholder. The deduction is not defeated by a remote possibility that under imaginary circumstances there may be earnings and, if so, that they may inure to private benefit; but by actual net earnings which do inure to such benefit.

The bequest to the School should have been allowed to be deducted.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL concurs in the result only.

SMITH dissents on the first point.