*Decision will be entered under Rule 50.*

The Golden Rule Church Association, a California Non-Profit Religious Organization, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Harold V. Norris, E. L. Hanson, and Marian T. Huff, as the Elected Delegates Committee of the Ecclesiastical Society of Christ's Church of the Golden Rule, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 90145, 90146. Filed February 28, 1964.

*Howard B. Crittenden, Jr.*, for the petitioners.
*Sidney U. Hiken* and *William T. Ivey, Jr.*, for the respondent.

---

OPINION

Out of the plethora of issues and arguments presented in the pleadings and briefs, one appears to be crucial to the resolution of this complex case—whether the activities of the committee were such that it was exempt from taxation under section 501(c)(3).[4]

Respondent maintains that (1) the committee was not operated exclusively for religious purposes since its activities involved the operation of commercial enterprises and (2) expenditures for maintenance of the student ministers constituted inurement of net earnings to the benefit of individuals.[5]

Petitioners insist that the training projects were maintained as part of the church's religious activities. They argue that it would be a violation of the first amendment to the U.S. Constitution[6] to treat such activities as constituting operation for nonreligious purposes merely because religious organizations in this country do not normally undertake such activities for religious purposes. On the inurement point petitioners analogize the expenditures to those incurred generally by religious organizations who provide income or subsistence to ministers, sextons, and others who perform services for such organizations.

---

[4] SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.
(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \* \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

[5] Respondent does not contend that any of the entities here involved attempted to influence legislation or participated in any political campaign.

[6] Amendment 1.
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

We agree that petitioners were exempt from Federal income taxation during the years before the Court.

The statute requires, in relevant part, that the committee be organized and operated exclusively for religious *purposes*. In this requirement, the statutory language treats as a touchstone, not the organization's activity, but rather the end for which that activity is undertaken. *Trinidad* v. *Sagrada Orden*, 263 U.S. 578, 582 (1924); *Unity School of Christianity*, 4 B.T.A. 61, 70 (1926). See sec. 1.501 (c) (3)-1 (e) (1),[7] Income Tax Regs.

We recognize that activities such as the "illustrations" operated by the committee are normally carried on in substantial part for the purpose of producing income. See, e.g., *Help the Children, Inc.*, 28 T.C. 1128 (1957); *Scripture Press Foundation*, 152 Ct. Cl. 463, 285 F. 2d 800 (1961). Cf. *Sand Springs Home*, 6 B.T.A. 198 (1927). Nevertheless an activity normally carried on to produce income may, in certain cases, be carried on exclusively[8] for other purposes. *Unity School of Christianity*, supra at 66; *Saint Germain Foundation*, 26 T.C. 648, 657-658 (1956).[9] See *Frederic C. Leubuscher, Executor*, 21 B.T.A. 1022, 1029 (1930), modified on another point 54 F. 2d 998 (C.A. 2, 1932).

The activities upon which respondent relies for his ruling denying exemption were not the sources of the income respondent here seeks to tax. In fact, respondent has conceded that these activities gave

---

[7] Sec. 1.501(c)(3)-1. Organizations organized and operated for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals.

\* \* \* \* \* \* \*

(e) *Organizations carrying on trade or business*—(1) *In general*. An organization may meet the requirements of section 501(c)(3) although it operates a trade or business as a substantial part of its activities, if the operation of such trade or business is in furtherance of the organization's exempt purpose or purposes and if the organization is not organized or operated for the primary purpose of carrying on an unrelated trade or business, as defined in section 513. In determining the existence or nonexistence of such primary purpose, all the circumstances must be considered, including the size and extent of the trade or business and the size and extent of the activities which are in furtherance of one or more exempt purposes. An organization which is organized and operated for the primary purpose of carrying on an unrelated trade or business is not exempt under section 501(c)(3) even though it has certain religious purposes, its property is held in common, and its profits do not inure to the benefit of individual members of the organization. See, however, section 501(d) and § 1.501(d)-1, relating to religious and apostolic organizations.

[8] The Supreme Court has defined "exclusively" in this context to mean that there is no nonexempt purpose that is "substantial in nature." *Better Business Bureau* v. *U.S.*, 326 U.S. 279, 283 (1945).

[9] This discussion must be sharply distinguished from the source-vs-destination of income controversy. E.g., *C. F. Mueller Co.*, 14 T.C. 922 (1950), revd. 190 F. 2d 120 (C.A. 3, 1951). We may assume for purposes of this opinion that if the committee's activities were engaged in for the substantial purpose of earning income, then it would not be exempt even if the income so earned were devoted to exempt purposes. Here, we have concluded that the committee's activities were not engaged 'in for the substantial purpose of earning income.

rise to net operating losses aggregating more than the profit from the timber sale. The carrying on of these activities despite persistent losses, the testimony of petitioners' witnesses as to the petitioners' purposes, and the committee's charter and bylaws, all indicate that the activities were not carried on to make profits or for any other non-exempt purpose. The record as a whole convinces us, and we have found as a fact, that the training projects operated by the committee and its student ministers were carried on exclusively for religious purposes. This conclusion is strengthened by, but does not depend upon, respondent's counsel's statement at the trial that "There is no effort, no attempt, no desire to attack or impeach the integrity of these people or their intentions or their honor or their faith or anything else."

We agree that religious organizations in this country do not normally run such business operations. But that is not a proper justification for our refusal to recognize that *this* religious organization did engage in its activities for exclusively religious purposes. As we stated in *Unity School of Christianity, supra* at 70:

In considering whether a corporation is religious, charitable or educational, we must always be guided by the character of the organization and its activities. Religion is not confined to a sect or a ritual. The symbols of religion to one are anathema to another. What one may regard as charity another may scorn as foolish waste. And even education is to-day not free from divergence of view as to its validity. Congress left open the door of tax exemption to all corporations meeting the test, the restriction being not as to the species of religion, charity, science or education under which they might operate, but as to the use of its profits and the exclusive purpose of its existence.

We have grave doubts that a contrary conclusion would be permissible under the Constitution of the United States. It is a violation of the first amendment to discriminate between religious organizations. *Niemotko* v. *Maryland*, 340 U.S. 268, 272–273 (1951) ; *Fowler* v. *Rhode Island*, 345 U.S. 67, 69 (1953). Although tax benefits such as exemption may be matters of legislative grace (compare *New Colonial Co.* v. *Helvering*, 292 U.S. 435, 440 (1934) ; *Helvering* v. *Bliss*, 293 U.S. 144, 150–151 (1934) ; and *Better Business Bureau* v. *United States*, 326 U.S. 279, 283 (1945)) nevertheless, a denial of such benefits granted to others of essentially the same class may well rise to the level of an unconstitutional discrimination. *Speiser* v. *Randall*, 357 U.S. 513, 518 (1958) ; *United States* v. *Seeger*, 326 F. 2d 846 (C.A. 2, 1964). See *Sherbert* v. *Verner*, 374 U.S. 398, 404–406 (1963). If other religious organizations, solely because they are religious organizations, would not be taxable on timber sale proceeds such as those here sought to be

taxed, then we doubt that petitioners can be taxed on this same transaction simply because their religious doctrine is in part unorthodox.[10]

Where it can fairly do so, a court should interpret statutory provisions so as to avoid serious doubts as to their constitutionality. E.g., *United States* v. *Delaware & Hudson Co.*, 213 U.S. 366, 407-408 (1909); *Greene* v. *McElroy*, 360 U.S. 474 (1959); *United States* v. *Jakobson*, 325 F. 2d 409 (C.A. 2, 1963). The content we have here given to the phrase "religious purposes" will satisfy this obligation. See *Washington Ethical Society* v. *District of Columbia*, 249 F. 2d 127, 129 (C.A.D.C. 1957); *Fellowship of Humanity* v. *County of Alameda*, 153 Cal. App. 2d 673, 696, 315 P. 2d 394, 408 (Dist. Ct. App., 1st Dist., 1957).

Respondent places his total reliance in this issue upon our 1955 Memorandum Opinion in *Peggy Lou Riker* and its affirmance in 244 F. 2d 220 (C.A. 9, 1957). In *Riker* the taxpayers sought to deduct contributions made to the church and the committee or its predecessor, during the period October 1, 1947, through December 31, 1949. We denied the deductions on the grounds that the committee was organized and operated in substantial part for the purpose of conducting profit-making commercial enterprises and that the church retained such extensive control over the committee's operation that the committee's "commercial activities should properly be ascribed to the ecclesiastical society itself in determining the latter's qualifications under section 23(o) [of the 1939 Code]."

Respondent properly acknowledges that the doctrine of res judicata is not applicable here. Since neither petitioner now before us is identical with, a successor to, or in privity with either petitioner before us in *Riker*, the doctrine of collateral estoppel is also inapplicable. *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948). In effect, then, respondent relies upon stare decisis.

We have carefully examined the record in *Riker* and conclude that that case must be distinguished from the one before us. Firstly: In that case the record showed that the committee had reported operating profits of $189,826.34 and $147,192.84 for its fiscal years ending September 30, 1948 and 1949.[11] No evidence was presented in that case indicating that the church or the committee had suffered losses in prior or subsequent years. In the case before us, the committee's

---

[10] It does not necessarily follow that we must accept all claims that activities are religious simply because those claims are sincere. Nor are we here required to essay a definition of religion. We are convinced that any constitutionally permissible definition would treat petitioners, together with the church, as religious organizations.

[11] The record before us contains no explanation of the substantial discrepancy between the profits reported in *Riker* and the losses for those same years stipulated to by the parties herein and noted in our Findings of Fact, *supra*.

stipulated operating losses have been consistent and substantial for the years relevant to our inquiry. We do not mean to say that a profitable operation must lead to taxation while a nonprofitable one will be exempt. However, we regard consistent nonprofitability as evidence of the absence of commercial purposes. Cf. *Scripture Press Foundation*, 152 Ct. Cl. 463, 468, 285 F. 2d 800, 803.

Secondly: The constitutional argument was not presented to us in *Riker*. It is a commonplace that courts will not consider constitutional arguments unless properly raised by those with standing to make the arguments. For that reason, we had no occasion in *Riker* to consider whether the possible unconstitutionality of a decision denying exemption would be a factor in determining the outcome of that case. For that reason also, we express no view here on the question, logically related to our decision in this case, as to whether respondent must prevail because it is a violation of the first amendment to grant tax exemption to religious organizations simply because of their status as religious organizations. Compare Justice Reed's dissent in *McCollum* v. *Board of Education*, 333 U.S. 203, 249 (1948), and Justice Douglas' concurring opinion in *First Unit. Church* v. *Los Angeles*, 357 U.S. 545, 548 (1958), both apparently assuming the grant to be constitutional, and Reiling, "What is a Charitable Organization," 44 A.B.A.J. 525, 595 (1958), urging that the grant is constitutional, with the joint dissent of Justices Roberts, Frankfurter, and Jackson in *Follett* v. *McCormick*, 321 U.S. 573, 581 (1944), Justice Douglas' concurring opinion in *Engel* v. *Vitale*, 370 U.S. 421, 437, footnote 1 (1962), and Note, "The Constitutionality of Tax Benefits Accorded Religion," 49 Col. L. Rev. 968 (1949), all suggesting that the grant is unconstitutional.

Respondent further argues that the subsistence provided by the committee to the student ministers constitutes an inurement of net earnings to those persons within the meaning of section 501(c)(3). However, respondent concedes that, at least for the years before the Court, the expenditures for student minister maintenance constitute proper deductions by the committee. None of the entities paid salaries to those student ministers. We passed upon this question in a similar setting in *Saint Germain Foundation*, *supra* at 658–659. No reason has been suggested for distinguishing this case from that. In accordance with our ruling in *Saint Germain*, we hold that the provision of subsistence to the student ministers did not constitute inurements of net earnings to individuals.

Accordingly, we hold that, for the years before us, the committee was exempt from Federal income taxation under section 501(c)(3). In view of the fact that the church clearly is a religious society and that only the committee's activities were challenged as destructive of

exemption under that provision, the church is also exempt as a religious organization. Since the association's only function was to hold property for the church and to transfer title to, use of, and rents derived from the church's property as the church might direct, the association is exempt under either section 501(c)(2)[12] or 501(c)(3).[13]

Since the church, the committee, and the association all were exempt, it is not necessary to decide which entity should be charged with the timber sale profit; whether the three are to be treated as one entity for Federal income tax purposes; whether the committee's exempt organization information return for its taxable year 1956 was a return for statute of limitations purposes under section 6501(g)(2); whether the limitations period is to be extended to 6 years under section 6501 (e)(1); and whether the committee is exempt as an apostolic association under section 501(d).

*Decisions will be entered for petitioners.*

---

[12] SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

* * * * * * *

(2) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under this section.

[13] The parties disagree as to the weight to be given to the issuance of the association's corporate charter under State law substantially identical to the Internal Revenue Code provisions here relevant. Since we have arrived at our conclusions on the basis of the other evidence in the record, we do not here resolve that dispute.