UNIVERSAL BIBLE CHURCH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Universal Bible Church, Inc. v. Commissioner
Docket No. 26123-81X.
United States Tax Court
T.C. Memo 1986-170; 1986 Tax Ct. Memo LEXIS 442; 51 T.C.M. (CCH) 936; T.C.M. (RIA) 86170; April 24, 1986. *442 Petitioner, Universal Bible Church, Inc. (UBC) instituted this action for declaratory judgment pursuant to section 7428. UBC, a nondenominational religious organization, seeks exclusion from private foundation classification under section 509(a)(1) because it is a "church" within the meaning of section 170(b)(1)(A)(i). Held, that petitioner has not satisfied its burden of proof that it qualifies as a "church." Peter R. Stromer, for the petitioner. Joan R. Domike, for the respondent. PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Special Trial Judge: This is an action for declaratory judgment pursuant to section 7428 [1] and Rule 211. [2] This matter has been decided pursuant to the provisions of section 7456(d) and Rule 218(a). Petitioner, Universal Bible Church, Inc. (hereinafter UBC), seeks a declaratory judgment and challenges respondent's determination that petitioner was not a "church" within the meaning of section 170(b)(1)(A)(i). Petitioner has invoked the jurisdiction of this Court for *443 a declaratory judgment pursuant to section 7428(a). Respondent held that petitioner is exempt from Federal income taxation as a religious organization described in section 501(c)(3). Respondent further determined that petitioner was excluded from private foundation classification under section 509(a)(1) as a religious organization within the meaning of section 170(b)(1)(A)(vi), but not as a "church" within the meaning of 170(b)(1)(A)(i). The issue for decision is whether petitioner qualifies as a church within the meaning of section 170(b)(1)(A)(i). This case was submitted on a stipulated administrative record under Rules 122 and 217. UBC was incorporated on July 24, 1979, as a nonprofit corporation under the laws of the State of Illinois, with its headquarters at the time it filed the petition herein at Northbrook, Illinois. Petitioner filed an Application for Recognition of Exemption pursuant to section 501(c)(3) (Form 1023) on August 22, 1979. In the application, petitioner claimed that it was not a private foundation within the meaning of section 509(a) because it qualified as a church within the meaning of section 170(b)(1)(A)(i). The application (Form 1023) was refiled on *444 September 24, 1979. On January 21, 1981, the Internal Revenue Service issued a letter to UBC advising that petitioner was exempt from Federal income taxation as a religious organization described in section 501(c)(3). The January 21, 1981, letter modified a prior letter of August 29, 1980, regarding petitioner's exempt status, and further reaffirmed the determination that petitioner did not qualify as a church within the meaning of section 170(b)(1)(A)(i). The letter stated: Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization described in sections 509(a)(1) and 170(b)(1)(A)(vi). Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period. This advance ruling period begins on the date of your inception and ends on December 31, 1981. Petitioner asked for clarification, reconsideration and amplification of the January 21, 1981, determination. Respondent issued a ruling letter that petitioner was not a church. *445 That letter stated as follows: Our adverse ruling is made for the following reason(s): your organization is non-denominational. You state your "main goal is to promote maximum Bible Story reading amongst all people." Based on all of the evidence submitted, you have not established that you are a "church" within the meaning of section 170(b)(1)(A)(i) of the Code. UBC timely filed a petition herein seeking a declaratory judgment with respect to the adverse ruling letter issued by respondent. Accordingly, the prerequisites for declaratory judgment have been satisfied under section 7428(b). [3]
*446 The Articles of Incorporation, Constitution, and by-laws set forth the purposes of UBC as well as its structure and organization. The purposes of the organization are to disseminate the word of God in the Bible. The means by which this is to be done are radio, television, records and literature. The organization encourages Bible study within the family and within groups throughout the world. The Articles of Incorporation provide that people of all religious beliefs may belong to the organization and that the sole requirement of membership is a conscientious awareness of the Bible. The constitution provides, however, that a member must be an evangelical Christian of good reputation who will subscribe to certain declarations of faith. The government of the church is vested in a Board of Trustees who among other things could appoint an ordination committee for the ordination of ministers. It is respondent's position that even though petitioner qualifies as a religious organization and therefore is entitled to exempt status, it nevertheless does not qualify as a "church." Respondent argues that the courts look to certain characteristics which are usually found in churches and that *447 UBC has failed in its burden of proof that it embodies these characteristics. Petitioner argues that respondent's determination involves invidious discrimination violative of UBC's First Amendment rights. [4] Petitioner cites two cases as authority for the proposition that the Internal Revenue Service has previously granted nondenominational and interdenominational organizations "church tax-exempt status." Respondent properly points out that neither Universal Life Church, Inc. v. Commissioner,372 F.Supp. 770 (E.D. Cal. 1974), nor Golden Rule Church Assn. v. Commissioner,41 T.C. 719 (1964), cited by petitioner, involved the issue of whether or not the taxpayer qualified as a church. Both cases involved entitlement to an exemption generally under section 501(c)(3).[5] *448 Respondent's determination that petitioner is not a church does not abridge its First Amendment rights. In Church of Scientology of California v. Commissioner,83 T.C. 381, 454 (1984), we fully discussed the First Amendment challenges by a taxpayer in the context of religious entanglement. We are satisfied that there is no First Amendment violation in this case. We see no need for further discussion on this point. See also Graham v. Commissioner,83 T.C. 575 (1984). The burden of proving that respondent's determination is incorrect rests upon petitioner. National Association of American Churches v. Commissioner,82 T.C. 18 (1984); Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Rule 217(c)(2). While the Internal Revenue Code does not define the term "church," section 1.511-2(a)(3)(ii), Income Tax Regs., pertaining to unrelated business income of exempt organizations provides in part that "a religious * * * organization shall be considered to be engaged in * * * carrying out the functions of a church if its duties include the ministration of sacerdotal functions and the conduct of religious worship * * * [which is to be determined *449 based upon] the tenets and practices of a particular body constituting a church." See Lutheran Social Service of Minnesota v. United States,758 F.2d 1283, 1286 (8th Cir. 1985). [6] This Court as well as others have considered the question of whether a particular organization constitutes a "church." [7]
UBC has failed in its burden of proof in this declaratory judgment action. The one and one half page letter (filed as petitioner's brief) was of no assistance to petitioner or the Court. The organizational documents including the Articles of Incorporation, the Constitution, and the by-laws provide substantial detail concerning the nature of the organization. The administrative record as it relates to the operation of UBC during the period under consideration (July 24, 1979, the date incorporated, to July 21, 1981, the date of the final *450 adverse ruling) is, however, lacking in factual detail. Petitioner has failed in its burden of proof to this extent. Many of the operational facts in the administrative record come from three series of questions by respondent and answers from petitioner. Some of the answers are vague and incomplete. In other circumstances, the answers are inconsistent with prior answers or information. With these qualifications, we highlight portions of the record which we believe are relevant to the issue before us. [8]
UBC is not affiliated with any other church or organization. [9] There is no distinct religious history. The general purpose of UBC is the promotion of the tenets of religion as set forth in the Bible. The primary means are to be through radio, television and other media. In an effort to attract members, the trustees talk to people and tell them about the organization. The "letterhead" of the organization indicates under its name *451 as follows: "A Radio and T. V. Ministry". Yet, during the period under consideration, no such promotion was made despite the statement by UBC that as of November 17, 1980, it was fully operational. The organization believes in the Sacraments of Baptism, Marriage, and Communion and states generally that it performs these functions. During the period under consideration UBC had not baptized anyone, had participated in two marriage ceremonies and administered communion every day. Services are conducted seven days a week *452 and the King James [10] version of the Bible is utilized. The record is inconsistent as to the number of people who attended services. [11] The services are usually conducted by C. J. Myers, Jean L. McKinley, or Diane J. Cooke (Tuckett). The service begins with a prayer, is followed with a discussion of a passage from the Bible and concludes with music, singing and a prayer. The places of worship are the homes of the trustees. The trustees' places of residence and their positions are as follows: Name
Position
Residence
Charles J. Myers
Pastor
Mt. Prospect, Illinois
Carol A. Thies
Secretary
Downers Grove, Illinois
Gene A. Weisbecker * *453 Treasurer
LaGrange, Illinois
Diane J. Cooke (Tuckett)
Asst. Pastor
Pataskala, Ohio
Jean L. McKinley
Asst. Pastor
Downey, California
Mabel E. Wright
Cerritos, California
Based on the geographic distances, it is apparent that the trustee-members do not all attend the same service on a daily basis. The record does not indicate whether each of the ministers conducts services in his or her own home or whether there is some blending of these services. Charles J. Myers, Pastor, and Diane J. Cooke (Tuckett) and Jean L. McKinley, assistant pastors, have been ordained by the Universal Life Church, Inc. They also have been ordained by the UBC Ordination Committee. [12] *454 Charles J. Myers attended Northwestern University from 1955 to 1963 majoring in accounting and law. Since 1979 he has been taking theology courses from Zion Faith College. He has also taken theology courses from the American Institute of Theology. On July 9, 1979, he received a Doctorate of Divinity Degree from the Universal Life Church. Little information is provided with respect to the educational or religious training of Diane J. Cooke (Tuckett) and Jean L. McKinley other than that they have taken some theology courses. The record further does not clearly indicate whether there are any members beyond the trustees. Petitioners' response to respondent's inquiries stated (without any further specificity) that on a number of occasions there were less than fifty members. [13] Although allegedly fully operational, there are no Sunday schools or religious instruction for children of members. At a minimum, a church must include a body of believers that assembles regularly to worship. American Guidance Foundation, Inc. v. United States,supra. A person and his family simply do not satisfy this minimal test. American Guidance Foundation v. United States,supra;Church of the Visible Intelligence that Governs the Universe v. United States,supra. *455 We find the following statement in American Guidance Foundation particularly applicable here: It is not enough that a corporation believes and declares itself to be a church. Nor is it sufficient that the applicant prepares superficially responsive documentation for each of the established IRS criteria. To hold otherwise would encourage sham representations to the IRS and result in adverse tax consequences to the public at large. In this instance, AGF does not employ recognized, accessible channels of instruction and worship. There is little if any evidence that it seeks to reach or serve a congregation. Private religious beliefs, practiced in the solitude of a family living room, cannot transform a man's home into a church. [490 F.Supp. at 307.] Based on UBC's failure to meet its burden of proof we find for respondent. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent's advance ruling as to petitioner's status under section 170(b)(1)(A)(vi), and the factual setting in which this ruling was to be applied, appear to be identical in all material respects with the advance ruling and setting described in Friends of Soc. of Servants of God v. Commissioner,75 T.C. 209 (1980).For the reasons set forth in that opinion, we conclude that this section 170(b)(1)(A)(vi) advance ruling does not deprive us of jurisdiction to determine whether petitioner should not be classified as a private foundation because it is a church described in section 170(b)(1)(A)(i)↩.
4. Petitioner makes the blanket statement of a First Amendment↩ violation without any detail or explanation. 5. Rev. Rul. 59-129, 1959-1 C.B. 58, also cited by petitioner, states that the Salvation Army is a church or a convention or association of churches within the meaning of section 170(b)(1)(A)(i). The ruling itself however states no facts from which an analogy might be drawn, nor has petitioner presented facts or argument which would be of some assistance to the Court.
6. See also Whelan, "'Church' in the Internal Revenue Code: The Definitional Problems," 45 Fordham L. Rev. 885, 890-891↩ (1977). 7. See Chapman v. Commissioner,48 T.C. 358 (1967); American Guidance Foundation, Inc. v. United States,490 F. Supp. 304 (D.D.C. 1980); Church of the Visible Intelligence that Governs the Universe v. United States,4 Cl.Ct. 55↩ (1983).
8. This is not to suggest that we are attempting to define the term "church". Due to petitioner's failure of proof, which results from the incomplete administrative record relating to the operation of UBC, this determination will have to await another day.↩
9. It is not clear from the record whether or not the organization is interdenominational. Neither the Articles of Incorporation, the constitution nor the by-laws specifically prohibit a member of UBC from being a member of another religious organization or church. There is no evidence in the record indicating to what extent, if any, members of UBC actually were members of other religious organizations or churches. The record does indicate that the ministers of UBC have been ordained by the Universal Life Church of Modesto, Inc. It is uncertain whether the ministers are also members of that organization, a chapter thereof, or any other organization constituting a church.↩
10. Petitioner refers to the "St. James" version of the Bible in its documents. We assume that petitioner utilizes the "King James" version of the Bible as there is no "Saint James" version of the Bible. ↩
11. While there are at least two places in the record indicating that attendance ranged from two to fifteen persons, a letter from UBC to the Internal Revenue Service dated Nov. 17, 1980, indicates that: "While there have been many days when there were only two people in attendance, and the most fifty, we hold the services regardless of how many people attend."↩
*. The trustees are all brothers and sisters except for Gene A. Weisbecker who is unrelated.
12. No standards had been set up by the ordination committee for ordination of ministers, thus there are no educational prerequisites or prescribed course of studies to become a minister.
13. On its application for exemption in response to question number 10 which asked "Is the organization a membership organization?", UBC placed an "X" in the box which states "NO". This would appear to be contradictory to its organizational documents as well as responses to respondent's inquiries. In another place in the administrative record UBC stated it had "several members."↩