STATE *vs.* WILLIAM B. FOWLER.

AUGUST 12, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This is a criminal complaint charging the
defendant with violating section 11 of chapter 149 of the
ordinances of the city of Pawtucket by making an address
to a religious meeting in a public park owned and main-
tained by that city.   The case was tried first in the tenth
judicial district court and following defendant's conviction
and sentence he duly appealed to the superior court.   How-
ever, before trial and by leave of court defendant filed a
motion to quash the complaint.   Thereupon the superior
court certified to this court for determination, in accordance
with general laws 1938, chapter 545, §6, as amended by
public laws 1940, chap. 941, sec. 2, certain questions of
doubt and importance as to the constitutionality of the
ordinance.

Upon consideration thereof we held in substance that
the ordinance on its face was not designed to interfere
with defendant's rights of freedom of speech, or of assembly,
or of religion; that it was part of a regulatory and nondis-
criminatory ordinance which was enacted many years ago
to secure the maximum reasonable and orderly use of the
park by the public for rest and recreation; that in effect

it was similar in purpose and principle to the one which was involved in the case of *Davis* v. *Massachusetts,* 167 U. S. 43; that, since the unequivocal statement of law in the *Davis* case had not been overruled by the United States supreme court, we could not say beyond a reasonable doubt that the ordinance here was unconstitutional and in violation of the first and fourteenth amendments to the United States constitution; and further that it did not violate similar guaranties of such rights in the constitution of this state. *State* v. *Fowler,* 79 R. I. 16.

Accordingly the case was remitted to the superior court where, after a trial *de novo* in which jury trial was specifically waived, defendant was convicted and sentenced to pay a fine of $5 and costs. Thereupon he duly prosecuted his bill of four exceptions to this court, but only the first, second and fourth are now being pressed. The third, being neither briefed nor argued, is deemed to be waived under our practice.

The evidence is either admitted or not disputed. The defendant is a resident of Arlington, Massachusetts, and is a minister of the group known as Jehovah's witnesses. He was invited by the local or Pawtucket members of such group to deliver a bible discourse to their assembly to be held in Slater Park on September 3, 1950. The city of Pawtucket owns that park, which has an area of approximately 194 acres and is situated in the residential section of the city. For a great many years it has been maintained as a public park having a variety of facilities for rest and recreation. These range generally from tennis courts to formal gardens. The mere assembly of a group of people, excluding, however, any public address with or without the aid of a sound-magnifying device, could be held without unduly interfering with the use of the park by others.

From 1916 to date use of the park has been regulated in the public interest by the ordinance in question and a nondiscriminatory administration thereof. That ordinance,

chapter 149, contains sixteen sections, many of which are unrelated to the exercise of constitutional rights. It appears in full as an appendix to our previous opinion in this case, to which reference is hereby made. *State* v. *Fowler, supra.* Section 11 thereof, which is at the base of the instant controversy, reads as follows: "No person shall address any political or religious meeting in any public park; but this section shall not be construed to prohibit any political or religious club or society from visiting any public park in a body, provided that no public address shall be made under the auspices of such club or society in such park."

The local members of the group had received permission previously to hold religious assemblies and had used the park for such purposes on two preceding Sundays. However, contrary to the express terms of the ordinance, defendant on September 3, 1950 began to address about 400 persons who had assembled there for a religious meeting. Approximately 150 of the assembly constituted members of the religious group and the other 250 were strangers who had come as invitees to such meeting. The latter probably were not residents of the city.

It is not disputed that defendant began to address the meeting with the aid of a microphone and *two* "loud speaker" devices; that he thus proceeded with his address sufficiently to define its religious character before interruption by the police; and that the address as made was admittedly contrary to the literal provisions of the ordinance. After being interrupted politely by the police, defendant was invited to go to the police station where the instant complaint was sworn out and the warrant was issued for his arrest. There is no question of intimidation, excessive force or lack of courtesy on the part of the police before, during or after the meeting. The contrary is admitted.

When the trial was about to commence defendant, with permission of the superior court, made a motion to quash, orally and in writing, on the grounds that the ordinance

on its face and as construed and applied is unconstitutional in that it abridges the rights of defendant to freedom of speech, freedom of assembly and freedom of worship, contrary to the provisions of the first and fourteenth amendments to the constitution of the United States and to the provisions of sections 3, 10, and 21 of article I of the constitution of Rhode Island. This motion was denied and is the subject of defendant's first exception.

The defendant concedes in his brief and argument that such motion is based on the identical grounds and raises the same constitutional questions as those involved in the certification which was decided by this court in *State* v. *Fowler, supra.* However, he insists that in such opinion we have misconceived the applicable law and have failed to follow the mandate laid down by the United States supreme court in many cases which he again cites; and that we have erroneously relied upon the *Davis* case which is either not the law or not in point. Especially he now emphasizes the cases of *Jamison* v. *Texas,* 318 U. S. 413, and *Commonwealth* v. *Gilfedder,* 321 Mass. 335, to show that the earlier case of *Davis* v. *Massachusetts, supra,* is no longer the applicable law of the United States in the circumstances here.

In view of the strong argument on this point we have re-examined the many cited cases but we fail to find wherein any of them lays down an express mandate requiring a different conclusion from the one which we reached and expressed previously on the basis of the pertinent law unanimously enunciated by the United States supreme court in the *Davis* case. In our judgment that case concerned an ordinance which in substance and effect is similar in principle and purpose to the one involved in the instant case. It was part of a general ordinance designed to control and regulate a common or park which was owned by the state or city and was maintained for the general convenience and comfortable use of the public as a whole. Likewise as part of the regulation it permitted in practical

effect what amounted to a prohibition of all religious and political addresses to assemblies in that public common or park, much as we have expressly in the ordinance under consideration herein.

Consequently the *Davis* case is clearly distinguishable from *Jamison* v. *Texas, supra,* which is relied on by defendant. There, among other provisions, the ordinance made it unlawful "to scatter or throw any handbills, circulars, cards, newspapers or any advertising device of any description, along or upon any street or sidewalk in the city of Dallas." Nothing in that ordinance purported to make it unlawful *to distribute* religious pamphlets, and yet the gravamen of the complaint there, as viewed from the evidence, was directed *solely* to the defendant's *distribution* of religious treatises which had on the back a reference to a book which could be purchased if desired. Therefore on the face of the ordinance and on the facts that case is different from the *Davis* case.

Moreover the ordinance in *Jamison* v. *Texas, supra,* differs still further from the one in the instant case in that the ordinance here expressly recognizes the right of religious groups to assemble and nowhere makes it unlawful to distribute religious pamphlets or to hold religious meetings and services. Therefore the *Jamison* case does not appear to us to carry any mandate, express or implied, that is applicable to the ordinance and facts of either the *Davis* case or the one now before this court.

It will serve no useful purpose to repeat what was said previously in our opinion on the certification concerning the numerous cases relied on by defendant, except perhaps to observe that we find it difficult to determine precisely which of the principles of law as stated in certain of the main opinions are actually concurred in by a majority of the justices of the United States supreme court. Likewise in those cases it becomes hard to know, in view of language in the several concurring and dissenting opinions, to what extent some statements of law in the main opinions may

have been restricted or inferentially overruled in later cases.

We may again point out, however, that in the *Davis* case the supreme judicial court of Massachusetts unanimously and unequivocally stated the law applicable to the right of an individual member of the public to use a park or common that is maintained and regulated by the state or municipality for use by the public as a whole, and that such statement of the law was expressly approved and incorporated as part of the opinion of the United States supreme court in *Davis* v. *Massachusetts, supra.*

Further the supreme court of the United States added thereto the following statement of the law which was unanimously concurred in: "It is, therefore, conclusively determined there was no right in the plaintiff in error to use the common *except in such mode and subject to such regulations as the legislature in its wisdom may have deemed proper to prescribe.* The Fourteenth Amendment to the Constitution of the United States does not destroy the power of the States to enact police regulations as to the subjects within their control * * * *and does not have the effect of creating a particular and personal right in the citizen to use public property in defiance of the constitution and laws of the State."* (italics ours)

That case, though frequently cited to the supreme court of the United States, has not been expressly overruled by that court. On the contrary it has been distinguished in some form from cases in which it was cited. Ordinarily a court does not distinguish one of its own cases if it really intends to overrule it and to hold that such case no longer states properly the applicable law of that jurisdiction. Moreover it is reasonable to expect that if and when the United States supreme court actually intends to overrule the express statements of law in the *Davis* case, it will reserve to itself the right to do so in equally unmistakable language for the guidance of other courts which must conform to that court's decisions.

But the defendant nevertheless argues that the *Davis* case has been nullified and in effect overruled by implications to be gathered from statements in certain of the cases decided by the United States supreme court and discussed in our former opinion. He urges that the decision of the supreme judicial court of Massachusetts in the case of *Commonwealth* v. *Gilfedder, supra,* shows a proper conception of the effect of those decisions and states the law presently governing cases of this kind. Apparently the Massachusetts court in that case did not adhere to the law previously stated by it in the *Davis* case, which had unanimous approval by the United States supreme court.

It is significant, however, that the Massachusetts court did not overrule its own decision in the *Davis* case and expressly conceded that it could not find a case where the supreme court of the United States had overruled its approval of that case. Furthermore it may be noted that the supreme judicial court of Massachusetts appears to have applied elsewhere, with reference to a certain decision of the United States supreme court, the principle that any change by way of extension in the ruling of the case then under consideration "must come from the court which first pronounced that doctrine." *Sherrer* v. *Sherrer,* 320 Mass. 351, 359. We agree with that pronouncement. By analogy here, if the explicit ruling of law in *Davis* v. *Commonwealth,* 167 U. S. 43, is to be overruled, it should come only from the United States supreme court.

At any rate the difficulty which we have with the procedure indicated by that opinion is twofold. We are bound to follow the supreme court of the United States in its decisions relating to the law governing the United States constitution. But we are not bound necessarily by another state court's interpretation of or implications from the decisions of the United States supreme court. Secondly, we cannot believe it to be a sound constitutional principle to leave the law applicable to the United States constitution to broad implications drawn generally by state courts

from opinions of the United States supreme court. Conceivably on such a basis there could be forty-eight different deductions or inferences as to what each state court thought a decision of the United States supreme court really meant and as to the limitation, if any, on the exercise of such a constitutional right which, according to a particular state court's deduction, had the concurrence of a majority of the United States supreme court. In our judgment that is not a desirable or helpful substitute for an authoritative and objective guide which the state courts are expected to follow in such important determinations.

On the other hand, if such a practice were to be adopted, then even if all state courts were in agreement on a particular conclusion deduced inferentially from language in certain opinions of the United States supreme court, the latter, which alone has the sole prerogative of determining questions relating to the United States constitution, might well say that a majority of that court had never overruled the *Davis* case; that such case had always been distinguished without intending to overrule it; and that it still is applicable law in the type of case where the question involves only the defendant's right, as a member of the public, to speak in a manner and under conditions which would violate the equal and correlative rights of other members of the public to a reasonable use of the park for its dedicated purpose. In our judgment, for all that appears in the cases thus referred to by the defendant and discussed in our previous opinion, there is nothing which would prevent such conclusions by the United States supreme court.

In that connection it is interesting to note the case of *Commonwealth of Pennsylvania* v. *Geuss*, 168 Pa. Super. 22, which was affirmed by the supreme court of Pennsylvania in 368 Pa. 290, and in which certiorari was denied by the United States supreme court since the argument herein. *Geuss* v. *Pennsylvania*, 342 U. S. 912. There the supreme court apparently did not feel constrained to interpret in

the manner urged by defendant here the statements of principles appearing in certain opinions of the United States supreme court. The Pennsylvania supreme court did not read such opinions as compelling a conclusion that an ordinance must be invalid if, as part of a reasonable regulation, it purports to prohibit an individual from exercising a constitutional right of freedom of speech in a public place. While that case involved an ordinance prohibiting the use of sound trucks on public highways, whereas here we have the use of two "loud speakers" in a small public park in a residential section of the city, yet the underlying principle of prohibiting a constitutional right as part of a reasonable regulation in the public interest is analogous to the regulation in the ordinance as construed and applied in the instant case.

Further, defendant's claim leads to discrimination. It would create in him, as one member of the public, a paramount right whereby he may insist not only that the park be maintained at public expense as a forum for the exercise of his constitutional right but also that he may exercise such right with the aid of sound-magnifying equipment so as necessarily to abridge or destroy the equal and correlative rights of others. Granting his constitutional right to freedom of speech, others also have an equal constitutional right not to be compelled to listen and not to be forced to attend a religious meeting and, as members of the public generally, not to have another person destroy their rights to use the park for its dedicated purposes of rest and recreation. We think that the unequivocal statement of the law as it appears in the *Davis* case is sound, reasonably protects the rights of defendant and others, and should be applied here. In our opinion defendant's right is not paramount to the rights of all others and its exercise is not to be indulged without reasonable limitation. Such a right ceases to be employed in a reasonable manner when in the nature of things its exercise, as here, is bound to

abridge or destroy the equal constitutional rights of other members of the public.

At any rate in the circumstances we fail to find wherein the applicable constitutional law of the United States has been stated so clearly that it amounts to a mandate, as urged by defendant, or that would constrain us to reach a result different from that which we expressed in our previous opinion when the case was before us on the certified questions. *State* v. *Fowler, supra.* On the contrary we prefer to apply the recognized rule which prohibits a state court from striking down a legislative enactment unless it appears beyond a reasonable doubt that it violates a particular provision of the constitution of the United States or of this state. So long as the unequivocal statement of law by the supreme court of the United States in the *Davis* case is left standing without a reasonably equivalent statement modifying or overruling it, we find it impossible to say beyond a reasonable doubt that the nondiscriminatory and realistically regulatory ordinance in the instant case is unconstitutional for the reasons asserted by the defendant. The defendant's first exception is therefore overruled.

The motion to dismiss, which is the subject of defendant's second exception, has no place in our practice and for that reason could be overruled. However, it admittedly involves the same essential question of law which has been discussed and decided in our previous opinion and also herein under the plaintiff's first exception. Likewise the defendant relies on the identical question under his fourth exception, because there is no dispute as to the evidence that the defendant is guilty if the ordinance is valid. These exceptions are therefore overuled.

For the reasons stated, all of the defendant's exceptions are overruled, the decision and conviction are affirmed, and the case is remitted to the superior court for further proceedings.

BAKER, J., dissenting. I am unable to agree with the

opinion of the majority of the court. This is the same case which was recently before us on certified constitutional questions of doubt and importance. See *State* v. *Fowler,* 79 R. I. 16. The case is now here after a trial in the superior court.

In my dissent from the opinion filed in the previous case I set out reasons for my view of the section of the ordinance in question. I am still of the opinion that section 11 of chapter 149 of the ordinances of the city of Pawtucket enacted August 17, 1916 is unconstitutional as being contrary to the pertinent provisions of the first and fourteenth amendments to the constitution of the United States. It is unnecessary to restate such reasons as they can be readily ascertained from an examination of the above-mentioned dissent. In the circumstances I am of the opinion that the defendant should be adjudged not guilty and should be discharged.

CAPOTOSTO, J., concurs in the dissenting opinion of Mr. Justice Baker.

*William E. Powers,* Atty. Gen., *Raymond J. Pettine,* Ass't Atty. Gen., for State.

*Aram A. Arabian, John J. McGrane, Hayden C. Covington, of New York Bar,* for defendant.