FOWLER *v.* RHODE ISLAND.

No. 340.   Argued February 3, 1953.—Decided March 9, 1953.

*Hayden C. Covington* argued the cause and filed a brief for appellant.

*Raymond J. Pettine,* Assistant Attorney General of Rhode Island, argued the cause for appellee.   With him on the brief was *William E. Powers,* Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The City of Pawtucket, Rhode Island, has an ordinance which reads as follows:

"SEC. 11. No person shall address any political or religious meeting in any public park; but this section shall not be construed to prohibit any political or religious club or society from visiting any public park in a body, provided that no public address shall be made under the auspices of such club or society in such park."

Jehovah's Witnesses, a religious sect, assembled in Slater Park of Pawtucket for a meeting which at the

trial was conceded to be religious in character. About 400 people attended, 150 being Jehovah's Witnesses. Appellant is a minister of this sect, residing in Arlington, Mass. He was invited to Pawtucket as a visiting minister to give a talk before the Pawtucket congregation of Jehovah's Witnesses. Appellant accepted the invitation, attended the meeting in the park, and addressed it over two loud-speakers. It was a quiet, orderly meeting with no disturbances or breaches of the peace whatsoever.

Appellant's address was entitled "The Pathway to Peace." He discussed the futility of efforts being made to establish peace in the world. And then, according to his uncontradicted testimony, he "launched forth into the scriptural evidence to show where we were on the string of time; that we had reached the end of this wicked system of things." Appellant had been talking only a few minutes when he was arrested by the police and charged with violating the ordinance set forth above. He was tried and found guilty over objections that the ordinance as so construed and applied violated the First and the Fourteenth Amendments of the Constitution. He was fined $5. His conviction was affirmed by the Rhode Island Supreme Court. 80 R. I. ——, 91 A. 2d 27. And see *Fowler* v. *State,* 79 R. I. 16, 83 A. 2d 67, an earlier opinion answering certified questions and holding the ordinance valid. The case is here on appeal. 28 U. S. C. § 1257 (2).

*Davis* v. *Massachusetts,* 167 U. S. 43, decided in 1897, sustained a conviction of a man for making a speech on the Boston Commons in violation of an ordinance that forbade the making of a public address there without a permit from the mayor. Much of the oral argument and most of the briefs have been devoted on the one hand to a defense of the *Davis* case and on the other hand to an attack on it. Analyses of subsequent decisions have been

submitted in an effort either to demonstrate that the *Davis* case is today good law, or to show that it has been so qualified as no longer to have any vitality. We are invited by appellant to overrule it; we are asked by respondent to reaffirm it.

We put to one side the problems presented by the *Davis* case and its offspring. For there is one aspect of the present case that undercuts all others and makes it necessary for us to reverse the judgment. As we have said, it was conceded at the trial that this meeting was a religious one. On oral argument before the Court the Assistant Attorney General further conceded that the ordinance, as construed and applied, did not prohibit church services in the park. Catholics could hold mass in Slater Park and Protestants could conduct their church services there without violating the ordinance. Church services normally entail not only singing, prayer, and other devotionals but preaching as well. Even so, those services would not be barred by the ordinance. That broad concession, made in oral argument, is fatal to Rhode Island's case. For it plainly shows that a religious service of Jehovah's Witnesses is treated differently than a religious service of other sects. That amounts to the state preferring some religious groups over this one. In *Niemotko* v. *Maryland,* 340 U. S. 268, 272–273, we had a case on all fours with this one. There a public park, open to all religious groups, was denied Jehovah's Witnesses because of the dislike which the local officials had of these people and their views. That was a discrimination which we held to be barred by the First and Fourteenth Amendments.

Appellant's sect has conventions that are different from the practices of other religious groups. Its religious service is less ritualistic, more unorthodox, less formal than some. But apart from narrow exceptions not relevant here (*Reynolds* v. *United States,* 98 U. S. 145; *Davis* v.

*Beason,* 133 U. S. 333) it is no business of courts to say that what is a religious practice or activity for one group is not religion under the protection of the First Amendment. Nor is it in the competence of courts under our constitutional scheme to approve, disapprove, classify, regulate, or in any manner control sermons delivered at religious meetings. Sermons are as much a part of a religious service as prayers. They cover a wide range and have as great a diversity as the Bible or other Holy Book from which they commonly take their texts. To call the words which one minister speaks to his congregation a sermon, immune from regulation, and the words of another minister an address, subject to regulation, is merely an indirect way of preferring one religion over another. That would be precisely the effect here if we affirmed this conviction in the face of the concession made during oral argument. Baptist, Methodist, Presbyterian, or Episcopal ministers, Catholic priests, Moslem mullahs, Buddhist monks could all preach to their congregations in Pawtucket's parks with impunity. But the hand of the law would be laid on the shoulder of a minister of this unpopular group for performing the same function.

The judgment is reversed and the cause is remanded to the Supreme Court of Rhode Island for proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE FRANKFURTER concurs in the opinion of the Court, except insofar as it may derive support from the First Amendment. For him it is the Equal-Protection-of-the-Laws Clause of the Fourteenth Amendment that condemns the Pawtucket ordinance as applied in this case.

MR. JUSTICE JACKSON concurs in the result.