Raymond **FIEDLER** et al., Plaintiffs,

v.

**MARUMSCO BAPTIST CHURCH** et al., Defendants.

Civ. A. No. 79–158–A.

United States District Court, E. D. Virginia, Alexandria Division.

Aug. 23, 1979.

Victor M. Glasberg, Alexandria, Va., for plaintiffs.

I. J. Crickenberger, Falls Church, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, Senior District Judge.

The plaintiff brought this civil rights action against the defendants under 42 U.S.C. § 1981 and the Thirteenth Amendment to the Constitution of the United States to compel them to readmit his daughters to the Marumsco Christian School and for damages resulting from their expulsion.

The plaintiff alleges his daughter, Melissa, a 14-year-old white girl, was expelled because she became acquainted and spoke with one of the very few black students in the school, and that his daughter, Charlotte, an 11-year-old white girl, was expelled because he complained of Melissa's expulsion to the local branch of the NAACP.

The defendants justify the girls' expulsion on disciplinary and religious grounds—they say Melissa was expelled because she refused to end a "romantic relationship" with the said black student while on school premises and at school functions.

The defendants filed petitions for Chapter XI and voluntary bankruptcy in the Bankruptcy Section of this Court on the morning this controversy was set for hearing on the merits, and moved that the scheduled hearing be stayed until their bankruptcy petitions could be heard and determined.

The plaintiffs moved that this Court—sitting in bankruptcy—proceed with the scheduled trial on the merits.

The Court bifurcated and stayed the damage claim—and the liability phase was heard without a jury.

From the pleadings, stipulations, depositions, exhibits and live testimony, the Court makes the following findings:

The Marumsco Baptist Church is an independent church of the fundamentalist Christian faith.

The Marumsco Christian School is a church ministry of the defendant Marumsco Baptist Church, the former being a religious mission of the latter.

The Marumsco Christian School is a school established by the defendant Church for inculcating and transmitting the religious beliefs of the members of the defendant Church. The defendant School holds itself out to the general public as providing, within the limits of its maximum enrollment, educational and related services to students who meet its admission requirements, pay the requisite tuition and fees, and abide by school regulations.

The school has admitted students without regard to race since it was founded in 1972 and seeks to encourage interracial harmony and friendship. The Church is open to members of all races.

Aleck Lee Bledsoe is the pastor of the Church and the principal of the school and acts for and on behalf of both the Church and the school.

Bledsoe does not generally oppose romantic relationship between the sexes, but he does oppose interracial romantic relationships and claims to base his opposition on religious beliefs derived from the Bible.

Rufus Bostic III was enrolled in the school for the 1978–1979 school year.

Melissa Fiedler is a 14-year-old white female, Charlotte Fiedler is an 11-year-old white female, and Rufus Bostic III is a 14-year-old black male.

Raymond Fiedler, et ux., enrolled their daughters (plaintiffs Melissa Fiedler and Charlotte Fiedler) in the Marumsco Baptist Church's school on May 18, 1978 for the 1978–1979 school year at said school.

In so doing, plaintiff Raymond Fiedler signed a series of agreements and covenants as a part of the contract of enrollment of his daughters in the Marumsco Baptist Church's school.

In the agreement signed by Raymond Fiedler as a part of said enrollment contract, full discretion was given to the said school's staff, including in such discretion the right to suspend or expel the said Raymond Fiedler's children from the school's program. Furthermore, the said school expressly reserves "the right to dismiss any student who does not respect its spiritual standards or cooperate in the educational process or does not fit into the spirit of the school."

As a ministry of Marumsco Baptist Church, the behavior and conduct standards and spiritual standards in the said school reflect and are based upon the religious tenets, doctrines, beliefs and convictions of the fundamentalist christian religion as held by Marumsco Baptist Church.

Based on their interpretation of the Bible, the defendants believe as a matter of firm and truly-held conviction, that salvation and sanctification are offered by God to all men and women regardless of race, and that the work and ministries of a New Testament church such as Marumsco Baptist Church must similarly be opened to all men and women regardless of race.

At all times relevant to the events in question in this litigation, Marumsco Baptist Church in all of its ministries (including its school) has been and remains racially integrated and non-discriminatory.

Friendship between students of all races at the school are not only condoned but encouraged by defendants.

Rufus and Melissa were good friends who had known each other while attending public elementary school, and had renewed their friendship at the defendant school.

As a matter of firm religious conviction based on their interpretation of the Bible, interracial marriage, interracial dating, and interracial romantic relationships violate the tenets, doctrines, and beliefs of the fundamentalist christian faith as held and practiced by the defendants.

Melissa Fiedler was counselled on several occasions regarding the nature of her relationship with Rufus Bostick III.

Defendant Bledsoe disapproved of what he viewed as a romantic relationship between Rufus and Melissa because it was interracial and admonished Melissa not to continue the relationship for that reason.

The defendants believed in good faith that a romantic relationship existed between Rufus and Melissa.

In the transportation to and from classes furnished by said school, Melissa on several occasions was reprimanded by a church staff member for sitting very close to the black student and putting her hands on him. (There is no need to recite additional romantic expressions observed by the Pastor and others at school and at school functions.)

Melissa Fiedler was warned by Pastor Bledsoe that under penalty of expulsion, such romantic expressions on school premises and at school events must end and her association with said black student under such circumstances on school premises must be limited in the future—when she disobeyed this directive she was expelled.

After said expulsion, the Pastor agreed with Mr. Fiedler to convert the expulsion of Melissa into a three-day suspension premised upon Melissa's adherence to the aforementioned restrictions and conducts set forth hereinabove and the implied and expressed willingness of Mr. Fiedler to cooperate with the school in the enforcement of its conduct requirements and disciplinary actions.

On the day following his telephone conversation with Mr. Fiedler, Bledsoe was told by third parties and did believe that Mr. Fiedler had contacted the NAACP regarding bringing suit against the school because of Melissa's expulsion.

Subsequent to the agreement of conversion of the expulsion of Melissa into a suspension as set forth hereinabove, Bledsoe instructed Deacon Ray Hunter to call Mr. Fiedler to ascertain what had transpired between Mr. Fiedler and the NAACP. Mr. Hunter was instructed to tell Mr. Fiedler that if Mr. Fiedler had contacted the NAACP and was planning to institute suit over Melissa's expulsion, then Melissa's expulsion would remain in effect and Charlotte would also be expelled.

Mr. Fiedler told Deacon Hunter that he had been prepared to drop the matter of Melissa's expulsion, that in light of the ultimatum conveyed to him by Deacon Hunter, he had now decided to proceed with legal action.

Deacon Hunter told Mr. Fiedler that Melissa's expulsion would remain in effect and that Charlotte was also expelled.

Plaintiffs made representations to defendants of their pursuit of action not in accord with the conditions of the suspension and the underlying enrollment contract and were in breach thereof, where upon defendants dismissed the aforementioned children of plaintiff Raymond Fiedler from Marumsco Baptist Church's school.

It is clear, from these findings, that the Fiedler children were not expelled from the Marumsco Christian School because Melissa talked to Rufus—or because Mr. Fiedler complained to the local branch of the NAACP. Melissa was expelled because she refused to end her romantic association with Rufus after she had been warned by the Pastor, under penalty of expulsion, that such interracial romantic expressions on school premises and at school functions must end.

Based on the defendants' interpretation of the Bible, interracial romantic relationships violate their religious tenets, doctrines and beliefs—they cannot condone any practice which they believe to be forbidden in conscience.

The plaintiffs' "threat to sue" claim is, at best, an afterthought—Melissa's expulsion, later reduced to a three-day suspension from school, was announced before her father contacted the local branch of the NAACP.

The record discloses that the Fiedlers sent their children to the Marumsco Christian School to obtain a Christian education and to learn self-discipline and to respect the rights of their peers.

After discussing Melissa's problem for some time with Mr. Fiedler, the Pastor agreed to allow her to return to school provided she would adhere to the school's requirement that she end her interracial romancing with Rufus at school and at school functions—and that the father would cooperate with the school officials in enforcing the school's conduct requirements.

When the Pastor learned that Mr. Fiedler had apparently changed his mind and was not going to send Melissa back to school on the conditions agreed upon—he expelled the children.

The Marumsco Christian School, in its admissions contract, expressly reserved the right to dismiss any student who does not respect the spiritual standards or cooperate in the educational process or does not fit into the spirit of the school.

The plaintiffs claim—no school, including a private one, may discriminate on the basis of race [social and/or romantic] without running afoul of the Thirteenth Amendment to the United States Constitution and 42 U.S.C. § 1981, citing *Runyon v. McCreary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)—is misplaced.

Mr. Justice Stewart stated on page 167, 96 S.Ct. on page 2593 of that opinion:

"It is worth noting at the outset some of the questions that these cases do not present. They do not present any question of the right of a private social organization to limit its membership on racial or any other grounds. They do not present any question of the right of a private school to limit its student body to boys, to girls, or to adherents of a particular religious faith, since 42 U.S.C. § 1981 is in no way addressed to such categories of selectivity. They do not even present the application of § 1981 to private sectarian schools that practice racial exclusion on religious grounds. * * * "

The plaintiffs also contend that it is unlawful to take adverse action against whites because they happen to associate with blacks, citing *Valle v. Stengel*, 176 F.2d 697 (3d Cir. 1949), (a case where white adults were barred from a swimming pool because of their friendship with blacks); *Langford v. City of Texarkana*, 478 F.2d 262 (8th Cir. 1973), and *Gutwein v. Easton Publishing Co.*, 272 Md. 563, 325 A.2d 740 (1974), (cases where white employees were discriminated against because of their association with blacks), and *Walker v. Pointer*, 304 F.Supp. 56 (N.D.Tex.1969), (eviction of white tenants because they entertained black guests).

None of these cases offers any help in determining whether the Thirteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1981 prohibit private sectarian schools from expelling students on religious grounds.

The plaintiffs—relying on Judge Goldberg's concurring opinion in *Brown v. Dade County Christian Schools, Inc.*, 556 F.2d 310 (5th Cir. 1977)—claim that the defendant's religious beliefs are not sincere—they say they are nothing more than the Pastor's secular philosophy and that there is nothing in the defendants' printed literature listing their religious opposition to interracial romances—that whatever role defendants' religious beliefs may have in their religious scheme, these beliefs do not stand at the heart of that scheme.

■ Whether a belief is "religious" and thus deserving of some protection by the First Amendment does not depend on whether the belief is true or false.

Even if consideration of such evidence is not foreclosed by the prohibition against judicial inquiry into the truth or falsity of religious beliefs (*United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148), the plaintiffs' claims are not supported by the findings here made.

Finally, the plaintiffs argue that the school's denial of Melissa's rights to romantically associate with whom she pleases during school hours and at school functions, on racial grounds, does not comport with the public policy of the United States as enunciated in 42 U.S.C. § 1981.

■ Of course, everyone has the right to have a romantic relationship with whom they please—but it does not follow that they have a Constitutional and/or statutory right to remain in a private sectarian school whose conscientious religious beliefs prohibit interracial romancing.

The First Amendment to the Constitution of the United States provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *."

■ The granting of the relief sought by the plaintiffs in this case would substantially limit and interfere with the free exercise of the defendants' religion by denying them the freedom to maintain discipline and regulate student behavior and to require such conduct as comports with the dictates, tenets, beliefs, convictions and doctrines of their religion.

The Marumsco Baptist Church is an independent, fundamental, Bible-believing and teaching church, an integral part of the ministry of which consists of the Marumsco Christian School.

The Marumsco Baptist Church is composed of born-again Christians who, on account of that fact, believe that they have the duty to rear their children to know the teachings of the Bible as the infallible word of God, and to follow Jesus Christ as their personal Saviour in their daily lives.

Both the church and its members believe that the church has a religious duty to provide a form of education, whose purpose and effect is to fulfill the aforesaid goals.

The religious belief involved in this case is the defendants' conviction that the Bible forbids interracial romancing, dating and/or marriage.

■ Although the defendants' religious convictions regarding interracial romantic relationships do not comport with public policy, nor meet with the majority acceptance, neither majority approval nor compliance with public policy may be the *sine qua non* upon which the practice of religion may be made to depend (*Fowler v. Rhode Island*, 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828)—the Government may not penalize nor discriminate against individuals or groups because they hold religious views abhorrent to the authorities (*Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965).*

■ The door of the free exercise clause of the First Amendment to the Constitution of the United States stands tightly closed against Governmental regulation of religious beliefs as such. *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213.*

■ The Governmental interest advanced by § 1981 must be a "compelling state interest" to pass Constitutional muster, for it is "basic that no showing merely of a rational relationship to such colorable state interest [will] suffice." (*Sherbert v. Verner*, 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965).*

Paraphrasing Judge Coleman's dissenting opinion in *Brown v. Dade County Christian Schools, Inc., supra*:

"I do not understand that the Marumsco Baptist Church is operating the Marumsco Christian School as a commercial enterprise. It is a direct, intimate adjunct of church activities, conducted in the house of worship. From the earliest days, when governments were doing absolutely nothing about it, nearly all religious denominations have conducted schools, including colleges, as an integral part of their activities. If the church is to remain absolutely separate and apart from the state, then no court should have the power to compel any church to readmit any student who had been expelled from its church school for religious reasons. This case may turn out to be the first step to a long, intrusive interference with the exercise of religion. I hope this does not prove to be so."

Therefore, the relief sought by the plaintiffs must be DENIED, and

It Is So Ordered, and

This case stands DISMISSED at the costs of the plaintiffs.

* These quotations were taken from *Bob Jones University v. United States*, 468 F.Supp. 890 (D.C.S.C.1978).