Topeka City Council Members City Hall 215 S.E. 7th Topeka, Kansas 66603-3914
Dear Topeka City Council Members:
You request our opinion concerning ordinance no. 16643 relating to the regulation of picketing at religious events. Specifically, you inquire whether there is any "controlling legal authority which would declare the ordinance unconstitutional because it conflicts with the first amendment to the United States constitution." You also request our opinion concerning the probability of the city's success in court if the ordinance is challenged on first amendment grounds and whether there is a way to quantify that chance. Finally, you ask us to comment on the city's potential exposure to assessment of attorney's fees should the city lose in a case challenging the ordinance in the United States district court.
Ordinance No. 16643 states, in relevant part, as follows:
 "ORDINANCE NO. __16643__
"AN ORDINANCE introduced by Deputy Mayor Jim Kelley regarding picketing.
"WHEREAS, to provide protection of those seeking to engage in picketing and the general public safety and welfare it is important to provide rules of conduct and general control over the time, place and manner of picketing activities; and
"WHEREAS, the right of a person to exercise his or her religious beliefs is recognized by the First Amendment of the Constitution of the United States and Section Seven of the Bill of Rights of the Constitution of the State of Kansas; and
"WHEREAS, the constitutional right of a person to exercise his or her religious beliefs is violated and interfered with when religious activities or events are targeted for pickets and other public demonstrations; and
"WHEREAS, full opportunity exists under the terms and provisions of this ordinance for the exercise of freedom of speech and other constitutional rights at times other than before, during and after religious activities or events; and
"WHEREAS, to balance the constitutional interests of those desirous of exercising their religious beliefs with those wishing to speak through picketing, the City intends to place reasonable time, place and manner restrictions on picketing religious activities or events.
 "BE IT ORDAINED BY THE COUNCIL OF THE CITY OF TOPEKA, KANSAS: "Section 1. Definitions.
"The following words and phrases, when used in this article, shall have the meanings, respectively ascribed to them:
"(a) Picketing or picket demonstration is any standing, sitting or any repeated walking by any person and carrying banners, placards, or signs. Picketing does not include any activity carried on under a validly issued parade permit.
"(b) The exercise of religious beliefs shall include scheduled worship services when posted anywhere on the property of the church, synagogue or other house of worship, funeral home or cemetery. It also includes funerals, memorial services for the dead, weddings, or observations of other religious sacraments, rituals or celebrations when the picket or demonstrator has been made aware of such service by publication or in any other manner.
"(c) An activity or event which involves the exercise of religious beliefs is an activity or event at a church, synagogue or other house of worship, funeral home or cemetery of which the public is provided with reasonable notice by the conspicuous posting of a sign or other specific notice indicating the time and place of the activity or event.
 "Section 2. Unlawful acts.
"(a) It is unlawful for any person to engage in picketing directed towards or interfering with an activity or event or any of its participants and within one hundred (100) feet of a place or structure during the period beginning one-half hour before and ending one-half hour after an activity or event at the church, synagogue or other house of worship, funeral home or cemetery which involves the exercise of religious beliefs. The distance shall be measured from all points along the property line of the property where the church, synagogue or other house of worship, funeral home or cemetery is located."
Peaceful picketing is expressive activity involving speech and as such is protected by the first amendment. United States v. Grace, 461 U.S. 171,75 L.Ed.2d 736, 743, 103 S.Ct. 1702 (1983). However, reasonable time, place and manner regulations of picketing may be necessary to further significant government interests. Police Dept. of Chicago v. Mosley408 U.S. 92, 33 L.Ed.2d 212, 92 S.Ct. 2286 (1972). In analyzing the validity of an ordinance that limits speech, the first determination to be made is the type of forum affected by the regulation. For purposes of this opinion, we will presume that the ordinance affects a public forum — "streets, sidewalks and parks", are considered, without more, to be "public forums." Perry Education Association v. Perry Local Educations'Association, 460 U.S. 37, 74 L.Ed.2d 794, 804, 103 S.Ct. 948 (1983). We therefore apply the heightened scrutiny required when dealing with restrictions on speech in a public forum.
 "Even in a public forum the government may impose reasonable restrictions on the time, place or manner of protected speech, provided the restrictions are justified without reference to content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 105 L.Ed.2d 661, 675, 109 S.Ct. 2746 (1989).
In order for this ordinance to pass constitutional muster under this test, it must be content neutral, narrowly tailored to a serve a significant government interest and there must be alternative channels for communication of the picketers' message.
Governmental regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech. The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because it disagrees with the message it conveys. Clark v. Community for CreativeNon-Violence, 468 U.S. 288, 82 L.Ed.2d 221, 104 S.Ct. 3064 (1984). An ordinance that serves purposes unrelated to the content of expression is deemed neutral even if it has an incidental effect on some speakers or messages but not others. Ward, supra.
The ordinance in question makes it unlawful to engage in picketing which is "directed toward or interfering with an activity or event." We have some concern that the "directed toward or interfering with" language may be construed as content-related because the prohibition only applies to pickets that are "directed toward" or "interfere" as opposed to pickets that are not "directed toward" or do not "interfere." Which pickets are directed toward or interfere with an activity and which pickets do not could very well be based upon the content of the message. For example, would a religious youth group which beckons church members to participate in its car wash fund-raising drive fall within the ambit of this ordinance? Probably not. However, a group of people marching in front of a synagogue on Friday evening carrying anti-semitic signs would most likely be prosecuted for violation of this ordinance. Consequently, it is our opinion that the ordinance fails the content-neutrality test which would subject the ordinance to a greater level of scrutiny by putting the city in the position of establishing that the ordinance is necessary to achieve a "compelling state interest." Ward. We do not believe that the city would be successful in shouldering that heavy burden. However, we believe that the ordinance may pass the content neutrality test if the language is changed to embrace the concept of "focused picketing" which the United States supreme court has approved inFrisby v. Schultz, 487 U.S. 474, 101 L.Ed.2d 420, 108 S.Ct. 2495 (1988). In that case the court upheld an ordinance which completely banned all picketing focused at a particular residence. Therefore, we suggest that the council consider the following changes:
 Section 1. Definitions
The following words and phrases, when used in this article, shall have the meanings, respectively ascribed to them:
a. "Focused picketing" means posting at a house of worship, funeral home, or cemetery. It includes, but is not limited to any standing, sitting, or walking in a deliberately slow or repeated manner past or around a house of worship, funeral home or cemetery by any person while carrying a banner, placard, or sign.
"Focused picketing" does not include any activity carried on under a validly issued parade permit.
b. "House of worship" means a structure that is used for the exercise of religious beliefs including but not limited to churches and synagogues.
c. "Protected religious event" is a scheduled worship service, wedding, funeral, memorial service for the dead or the observation of a religious sacrament, ritual or celebration which takes place at a house of worship, funeral home or cemetery to which the public is provided notice of the beginning and ending times of such event by the conspicuous posting of a sign on the property or where a picketer has been provided specific notice of the beginning and ending times of the event.
 Section 2. Unlawful Acts
It is unlawful for any person to engage in focused picketing which takes place within 75 feet of the property where the protected religious event is held during the period beginning one-half hour before and ending one-half hour after the protected religious event.
The distance shall be measured from all points along the property line of the property where the house of worship, funeral home, or cemetery is located.
It is our opinion that these changes may enhance the ordinance's chances of passing the content-neutrality test because the concept of "focused picketing" would prohibit both the religious youth and the group carrying the anti-semitic placards in the illustration used above from picketing within the prescribed time and distance parameters. What is prohibited is not related to the message but to the manner in which the message is conveyed.
The second test of constitutionality under the first amendment is whether the ordinance is narrowly tailored to serve a significant government interest. It is our opinion that the city has a significant interest in protecting the free exercise of religion by regulating picketing which focuses on a particular house of worship. Focused picketing is incompatible with peaceful worship and the fundamental right to attend a church or synagogue of one's choice. In Frisby the court found a significant government interest in protecting residential privacy which encompasses the "protection of the unwilling listener." This protection is also referred to as the "captive audience" doctrine which exhibits a judicial concern with balancing the right of free speech with the individual's right to be free from unwanted communication. Kovacsv. Cooper, 336 U.S. 77, 93 L.Ed.2d 513, 69 S.Ct. 448 (1949). This doctrine has been extended outside the confines of one's home. FCC v.Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 S.Ct. 1073 (1978) (radio broadcast); Lehman v. City of Shaker Heights, 481 U.S. 298,94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (advertising in buses), Grayned v.City of Rockford, 408 U.S. 104, 33 L.Ed.2d 222 (1972) 92 S.Ct. 2294, (1972) (ordinance prohibiting disturbances at schools).
It is our opinion that religious worshipers may be considered a "captive audience" because they cannot readily escape from the undesired medium of communication and they should not be placed in the position of forfeiting their first amendment right to worship. "The preferred position of free speech in a society that cherishes liberty for all, does not require legislators to be insensible to claims by citizens for comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself." Kovacs, 336 U.S. at p. 88.
Further, it is our opinion that the reformulated ordinance is narrowly tailored because it prohibits only a certain kind of picketing which occurs within specific and limited time and distance parameters. InFrisby the supreme court interpreted a complete ban on residential picketing to prohibit only picketing which focused on a particular residence. In Attorney General Opinion No. 92-64 we interpreted the statutory ban on funeral picketing as prohibiting only focused picketing in the immediate area of the mortuary, cemetery or church before and after funerals. The nature of a place and the pattern of its normal activities dictate the kinds of regulations of time, place and manner that are reasonable. The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. Grayned, 408 U.S. at p. 116. It is our opinion that the act of picketing — not the message of the picketers — is incompatible with the right of religious worshipers to practice their constitutionally protected beliefs.
Finally, there are ample alternative channels for communication of the picketers' information because the ordinance restrictions are confined to one-half hour before and after a worship service or event and then only within 75 feet from the house of worship. This gives those persons desirous of communicating their message the rest of the day to do so or they can post themselves 76 feet from the church or synagogue in question.
If the city is fearful of a challenge based on violation of the free exercise of religion clause to the first amendment, it is our opinion that the reformulated ordinance will prevail. The free exercise clause of the first amendment provides that congress shall make no law prohibiting the free exercise of religion. However, a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice. Church of Lukumi v. Hialeah, 508 U.S. ___, 124 L.Ed.2d 472, 113 S.Ct. ___ (1993). As we have concluded, the reformulated ordinance is content-neutral for the reasons previously discussed. The general applicability standard applies primarily to those laws which, though neutral in their terms, through their design, construction or enforcement target the practices of a particular religion for discriminatory treatment. Fowler v. Rhode Island,345 U.S. 67, 97 L.Ed. 828, 73 S.Ct. 526 (1953). The reformulated ordinance does not single out the practices of any particular religion. It applies to any group, including a religious group, which focuses its picketing on religious services within designated time and distance parameters. It would apply to people carrying signs with "hate" messages as well as to people carrying signs with the message that "Christ died for our sins".
While no one can guarantee whether a court will uphold the ordinance in question, it is our opinion that it will not survive a challenge based upon the first amendment because it does not appear to be content-neutral. We do believe that the reformulated ordinance may have a better chance of surviving court scrutiny and offer it as an option for the council to consider.
Finally, your question relating to fees should a court challenge succeed is governed by 42 U.S.C. § 1988 which assumes that an action would be brought for declaratory and injunctive relief pursuant to42 U.S.C. § 1983. Section 1988 allows "a prevailing party" "a reasonable attorney's fee" as part of the cost. There are many factors which play into the determination of what a "prevailing party" is, therefore it is difficult to comment on the potential for attorney's fees that the city may have to face if this ordinance is challenged in United States district court. However, in a similar existing case involving the constitutionality of the criminal defamation statute where plaintiffs prevailed, court documents reveal that the plaintiffs are requesting approximately $72,500 and the defendants are requesting that the court award between $20,000 — $25,000. The criminal defamation case would be similar to a court challenge to this ordinance because the issue to be decided is a legal one rather than a factual one. Consequently, there should be no need for any fact finding, discovery or evidentiary proceedings. It is anticipated that both sides will submit motions for summary judgment and brief the constitutional issues which the court will then rule upon.
Summarizing, it is our opinion that the ordinance at issue here violates the first amendment to the United States constitutional because it is not content-neutral. However, an ordinance which prohibits the focused picketing of a protected religious event within specified time and distance parameters is constitutional.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm