**Jerrold S. HELLER, Plaintiff–Appellant,**

v.

**EBB AUTO CO., dba Ron Tonkin Mitsubishi, Defendant–Appellee.**

No. 92–35277.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 1, 1993.

Decided Nov. 5, 1993.

William F. Hoelscher, Hoelscher & Associates, Tigard, OR, for plaintiff-appellant.

Jacob Tanzer and Bruce W. DeKock, Ball, Janik & Novack, Portland, OR, for defendant-appellee.

Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Jerrold S. Heller appeals a district court judgment and a jury verdict in favor of EBB Auto Company in Heller's action alleging that EBB unlawfully terminated him in violation of Title VII, its Oregon statutory counterpart, and Oregon common law. Because we find that EBB failed to initiate any effort to reasonably accommodate Heller's religious practice of attending the ceremony in which his wife and children were converted to Judaism, we reverse.

## I.

In late 1984, EBB Auto Company hired Jerrold S. Heller, who is Jewish, as a used-car salesperson. At that time, Heller's wife, Katherine, was studying to convert from Ca-

tholicism to Judaism in anticipation of their oldest son's bar mitzvah. Because Jewish law mandates that children take their mother's religion, the bar mitzvah could not take place until Katherine's conversion.[1]

Katherine completed her course of study in early May 1985. On Saturday, May 10, EBB notified Heller that due to an upcoming "tent sale" all vacations and leaves were cancelled for the weekend of May 17–19. On Tuesday, May 14, Rabbi Yonah Geller telephoned Heller at work and told him that the conversion ceremony for Katherine and her study group could take place on the morning of either the upcoming Friday (May 17) or Sunday (May 19). Because he assumed that the dates could not be changed, Heller never attempted to reschedule the ceremony.

Heller telephoned his immediate supervisor, Collyer Young, explained his situation, and asked for two hours off on either Friday or Sunday morning. Young asked if there was any way to hold the ceremony at another time. Upon Heller's negative response, Young gave him permission to miss a Friday morning sales meeting. Heller then telephoned Geller and informed the rabbi that he would be able to attend a ceremony on Friday morning. Geller subsequently informed the other members of Katherine's study group and made arrangements for the ceremony.

The next day (Wednesday, May 15), Young's superior, Greg Bowman, learned of Heller's leave of absence and countermanded it. Bowman instructed Young to inform Heller that he was required to attend the meeting and that, if he failed to do so, he would be fired. When Heller insisted on attending the ceremony, Young fired him.

That night, Young telephoned Heller's home, spoke to Katherine, and left word that he wanted to discuss the matter. The following day (Thursday, May 16), Heller went to EBB to pick up his final paycheck and Young attempted to talk things over with him. Heller refused and the parties had no further contact. Heller attended the conversion ceremony on Friday, May 17.

Heller filed suit claiming that his dismissal violated Title VII and its Oregon statutory counterpart and constituted wrongful termination under Oregon common law. The district court granted summary judgment for EBB on the basis that an earlier denial of Heller's Oregon unemployment compensation claim was *res judicata*. A Ninth Circuit panel reversed and remanded the case to the district court. Heller's statutory claims were tried by the court, which granted judgment for EBB, and the wrongful termination claim was tried by a jury, which rendered a verdict for EBB. Heller appeals the judgment and verdict.

## II.

Title VII makes it an unlawful employment practice for an employer "to discharge any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1) (1988). Title VII further provides:

> The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

*Id.* § 2000e(j). "The ... effect of this definition [i]s to make it an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practice of his employees...." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113 (1976).[2]

---

1. Conversion to Judaism requires a six- to twelve-month course of study that culminates in a conversion ceremony. A three-rabbi rabbinical court conducts the ceremony, which may take place on any day except Saturday, the Jewish Sabbath. The court questions the sincerity of the converts, issues an oath of obligation, and performs individual baptisms. For convenience, the rabbis generally convert several persons at the same time. If necessary, however, the court can conduct the ceremony on an individual basis. Absent extraordinary circumstances, the father of children who undergo conversion must be present for the ceremony.

2. Courts construe Oregon's statutory counterpart, Or.Rev.Stat. § 659.030 (1992), as identical to Title VII. *See, e.g., School Dist. No. 1 v.*

■ We analyze Title VII religious discrimination claims under a two-part framework. *First,* the employee must establish a prima facie case by proving that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements. The prima facie case does *not* include a showing that the employee made any efforts to compromise his or her religious beliefs or practices before seeking an accommodation from the employer. *See, e.g., Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472, 1475 (9th Cir.1986); *Anderson v. General Dynamics,* 589 F.2d 397, 401 n. 3 (9th Cir.1978), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). *Second,* if the employee proves a prima facie case, the employer must establish that it initiated good faith efforts to accommodate the employee's religious practices. *See, e.g., EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1512 (9th Cir. 1989); *Anderson,* 589 F.2d at 401.

The district court concluded that Heller failed to establish a prima facie case and that EBB had attempted in good faith to accommodate Heller's religious practices. We disagree.

### A.

■ Because it involves the application of a rule of law to established facts, we review *de novo* the issue of whether Heller established a prima facie Title VII case. *See, e.g., Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991).

EBB first suggests that the conversion ceremony is not a religious practice within the protection of Title VII and cites *Wessling v. Kroger Co.,* 554 F.Supp. 548 (E.D.Mich. 1982), as support. In *Wessling,* the district court held that an employee's voluntary participation in preparations for a Christmas play at her church was not within the scope

of Title VII. The court noted that the employee's early arrival to decorate and receive children was essentially "social in nature" and found that her participation "was family oriented, a family obligation, not a religious obligation." *Id.* at 552.

■ EBB's reliance on *Wessling* is misplaced. Title VII protects more than the observance of Sabbath or practices specifically mandated by an employee's religion:

> [T]he very words of the statute ("*all aspects* of religious observance and practice. . . .") leave little room for such a limited interpretation. . . . [T]o restrict the act to those practices which are mandated or prohibited by a tenet of the religion, would involve the court in determining not only what are the tenets of a particular religion, . . . but would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion. . . . [S]uch a judicial determination [would] be irreconcilable with the warning issued by the Supreme Court in *Fowler v. Rhode Island,* 345 U.S. 67, 70 [73 S.Ct. 526, 527, 97 L.Ed. 828] (1953), "[I]t is no business of courts to say . . . what is a religious practice or activity."

*Redmond v. GAF Corp.,* 574 F.2d 897, 900 (7th Cir.1978) (Title VII protects an employee's participation in regularly-scheduled Bible classes) (footnote omitted). *Accord McDaniel v. Essex Int'l, Inc.,* 571 F.2d 338, 342 (6th Cir.1978) (Title VII "applies to all religious observances and is not limited to claims of discrimination based on requirements of Sabbath work"); *Cooper v. General Dynamics,* 533 F.2d 163, 168 (5th Cir.1976) ("The language chosen is broad—broader can hardly be imagined—and entirely extravagant to a mere concern for Sabbatarianism or any other particular doctrine or observance"), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977); *Weitkenaut v. Goodyear Tire & Rubber Co.,* 381 F.Supp. 1284, 1288–89 (D.Vt.1974) (Title VII protects a minister's attendance at monthly church organizational meetings).

*Nilsen,* 271 Or. 461, 534 P.2d 1135, 1139 (1975); *Meltebeke v. Bureau of Labor and Indus.,* 120 Or.App. 273, 852 P.2d 859, 865 n. 4 (1993) (Edmonds, J., specially concurring); *Hillesland*

*v. Paccar, Inc.,* 80 Or.App. 286, 722 P.2d 1239, 1244 *rev. denied,* 302 Or. 299, 728 P.2d 531 (1986). Accordingly, Heller's state statutory claim succeeds or fails with his Title VII claim.

■ Under this broad framework, Title VII's protections clearly encompass Heller's participation in the conversion ceremony. Geller testified that the ceremony, and the role of the father and husband in it, are part of the basic teachings of Judaism. By sacrificing his job to attend, Heller demonstrated that he attached the utmost religious significance to the ceremony. Either fact is sufficient to invoke the statute.

■ EBB next asserts that the ceremony did not conflict with Heller's employment duties because Heller could have rescheduled it to a date when he was not working.[3] We disagree.

An inflexible duty to reschedule would impose too great a burden on employees who desire to attend religious ceremonies for which they might be able to change the date or time, such as baptisms, confirmations, or weddings. Although Heller never requested a change of date for the ceremony, his lack of action did not stem from a disregard for his employment duties. Rather, he thought the dates were fixed because the ceremony involved other converts and because his son's bar mitzvah was less than a month away. Given this good faith and the fact that Geller acted in reliance upon Heller's assured availability after Young gave him permission to attend, there was a conflict between Heller's religious practices and his employment obligations.

EBB lastly argues that, because Heller never explained the nature of the ceremony to EBB, he did not give notice of his conflict. The district court in *Wessling* is the only court to find an employee's Title VII notice to be insufficient to establish a prima facie case. There, the plaintiff told her employer only that she wanted to miss work in order to set up for her daughter's Christmas play. The court, in *dicta*, concluded that such notice "was not in terms of a request for an accommodation of her religious practices." *Wessling*, 554 F.Supp. at 552.

■ A sensible approach would require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements. *See Redmond*, 574 F.2d at 902 (informing employer that "I [am] not able to work on Saturday because of my religious obligation" is sufficient); *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir.1977) (employee must, at least, "inform[ ] his employer of his religious needs"), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 778, 54 L.Ed.2d 788 (1978). Under such a standard, Heller's notice to EBB was satisfactory. Young and Bowman knew that Heller was Jewish. Young knew that Heller's wife was studying for conversion. And, when Heller requested the time off, he informed Young why he needed to miss work.

■ Any greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence. If courts may not make such an inquiry, *see Fowler*, 345 U.S. at 70, 73 S.Ct. at 527; *Redmond*, 574 F.2d at 900, then neither should employers.

■ The district court therefore erred in holding that Heller did not establish a prima facie Title VII case. Heller demonstrated that his employment duties conflicted with a bona fide religious practice, notified EBB of that conflict, and was discharged because of his refusal to comply with the employment requirements.

#### B.

■ Because Heller established a prima facie case, EBB needed to show that it made reasonable efforts to accommodate Heller's attendance at the conversion ceremony. We review under the clearly erroneous standard the district court's conclusion that EBB

---

**3.** EBB claims that *Wessling* imposes a duty on employees to reschedule conflicting events when possible. In *Wessling*, the district court noted that an employee has "a duty to do everything on her part to help resolve the conflicts between her job duties and her alleged religious practices, and she fail[s] in this duty when she ma[kes] no attempt to reschedule the church function or find a substitute." *Wessling*, 554 F.Supp. at 552. The court only made that statement, however, in *dicta* after concluding that the employee's help in preparing for the play did not constitute a religious practice.

made such efforts. *See, e.g., Hardison,* 432 U.S. at 77, 97 S.Ct. at 2273; *Hacienda Hotel,* 881 F.2d at 1512.

■■■ Once an employee proves a prima facie case under Title VII, the burden shifts to the employer to show that it undertook "some initial step to reasonably accommodate the religious belief of that employee." *American Postal Workers Union v. Postmaster Gen.,* 781 F.2d 772, 776 (9th Cir. 1986). *Accord, e.g., Hacienda Hotel,* 881 F.2d at 1512; *EEOC v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 614–15 (9th Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989). Although neither Congress nor the EEOC has delineated the scope of this obligation, *see Hardison,* 432 U.S. at 75, 97 S.Ct. at 2272, it requires that, "at a minimum, the employer ... negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs." *Hacienda Hotel,* 881 F.2d at 1513 (citing *Hardison,* 432 U.S. at 75, 97 S.Ct. at 2272).

The employer need not make such an effort if it can show that any accommodation would impose undue hardship. *Townley Eng'g,* 859 F.2d at 615. An accommodation causes an "undue hardship" when it results in more than a *de minimis* cost to the employer. *Ansonia Bd. of Education v. Philbrook,* 479 U.S. 60, 67, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986); *Hardison,* 432 U.S. at 84, 97 S.Ct. at 2277. The record does not suggest, and EBB has not argued, that accommodating Heller would have caused undue hardship. *See also Anderson,* 589 F.2d at 402 (court skeptical of " 'hypothetical hardships' based on assumptions about accommodations which have never been put into practice") (quoting *Draper v. United States Pipe & Foundry Co.,* 527 F.2d 515, 520 (6th Cir.1976)).

■■■ EBB does, however, assert that it made a sufficient effort to accommodate Heller. We do not find that to be the case. After Heller scheduled the ceremony for Friday morning in reliance on Young's permission, EBB made no effort to negotiate with Heller or accommodate his conflict. *Cf. Hacienda Hotel,* 881 F.2d at 1513 (employer "made no effort whatsoever to accommodate

the religious belief of" the employee); *Townley Eng'g,* 859 F.2d at 614 (same); *Burns v. Southern Pac. Transp. Co.,* 589 F.2d 403, 406 (9th Cir.1978) (same), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Anderson,* 589 F.2d at 401 (same); *Redmond,* 574 F.2d at 903 (same). At the very least, Title VII requires that, once an employer gives an employee leave of absence to attend a religious ceremony, the employer should provide a good faith reason for rescinding that permission. The employee whose employer gives permission and then takes it away is no better off, and is perhaps worse off, than one whose employer never gave permission at all. Because it never gave Heller any reason for Bowman's countermand order, EBB did not meet its Title VII burden.

■■■ EBB asserts that, *after* Heller's termination, Young attempted accommodation by calling Heller's home and trying to discuss the situation with him. By that time, however, EBB had already violated Title VII by firing Heller. The subsequent conduct of Young and Heller is relevant only to the issue of mitigation of damages.

The district court concluded that no Title VII liability existed because Heller "refused to attempt to reasonably accommodate [EBB] and his work obligations." This conclusion misconstrues Title VII.

■■■ It is clear "that 'bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.' " *Ansonia,* 479 U.S. at 69, 107 S.Ct. at 372 (quoting *Brener v. Diagnostic Ctr. Hosp.,* 671 F.2d 141, 145–46 (5th Cir.1982)). An employee's "concomitant duty" to cooperate, however, arises only *after* the employer has suggested a possible accommodation: "[T]he statutory burden to accommodate rests with the employer[;] the employee has a correlative duty to make a good faith attempt to satisfy his needs *through means offered by the employer.*" *American Postal Workers,* 781 F.2d at 777 (emphasis added) (citing *Brener,* 671 F.2d at

146).[4] Because EBB made no effort to accommodate Heller prior to his termination, his duty of cooperation never arose.

EBB failed to show that it took an "initial step" towards accommodating Heller's conflicting religious practice. Heller was therefore under no duty to suggest alternatives or compromise his beliefs. The district court's conclusion that EBB reasonably accommodated Heller is clearly erroneous.

### C.

Heller established a prima facie case and EBB failed to satisfy its Title VII duty of reasonable accommodation. We reverse the district court's judgment for EBB on the Title VII and Oregon statutory claims.

### III.

 Oregon common law recognizes the tort of wrongful termination. *E.g., Delaney v. Taco Time Int'l*, 297 Or. 10, 681 P.2d 114, 115 (1984). A remedy for wrongful termination exists where an "employee is discharged while pursuing a right related to his role as an employee and [where] the right is one of important public interest indicated by constitutional and statutory provisions and caselaw." *Id.*, 681 P.2d at 118. Accordingly, termination for pursuing Title VII rights could be wrongful termination under Oregon law. *See, e.g., Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 689 P.2d 1292, 1297–1304 (1984). Heller contends that the district court incorrectly instructed the jury as to this wrongful termination claim, and we agree.

 We review *de novo* the district court's jury instructions to determine whether they properly stated the elements of Heller's Title VII claim. *See, e.g., Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.

1992). An error in the instructions requires reversal unless the error is probably harmless. *Id.*

 Because Heller's wrongful termination claim was derivative of his Title VII claim, the jury instructions needed to reflect the nature of Title VII liability, but they did not. The district court told the jury that "[t]he law requires both the employer and the employee to make reasonable accommodations when a religious practice conflicts with requirements." As described above, once an employee establishes a prima facie case, the burden is on the employer to take the initial step toward accommodation of the employee's conflicting religious practice. Only after the employer offers an accommodation does the employee's reciprocal duty of cooperation begin.

Under the district court's instructions, a reasonable juror could conclude that Heller had a duty to change the date of the conversion ceremony after EBB countermanded his leave of absence to miss the sales meeting. So concluded, the juror might find that EBB failed to initiate accommodation efforts and still render a verdict against Heller. Such a result would be contrary to law. The instruction was erroneous.

### IV.

Heller established a prima facie Title VII case and EBB failed to satisfy its duty of taking an "initial step" to reasonably accommodate Heller's religious practices. We therefore reverse the district court's judgment for EBB on the Title VII and Oregon statutory claims. We remand the case to the district court for a new trial of Heller's wrongful termination claim and for a determination of Heller's damages. We award

---

**4.** The cases cited by EBB are therefore inapposite. In *Yott v. North Am. Rockwell Corp.*, 602 F.2d 904, 907 (9th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980), for example, the court found no Title VII violation where the employer offered an employee, whose religious beliefs forbade contribution to labor unions, the opportunity to substitute for union dues payment to a charity of his choice. Similarly, in *Hudson v. Western Airlines, Inc.*,

851 F.2d 261, 266–67 (9th Cir.1988), the employer's collective bargaining agreement provided an employee with a flexible scheduling system with which she could avoid conflicts with her religious practices. *Brener* and *Mann* both involved employers who had given their employees comparable leeway in work scheduling to avoid religious conflicts. *Brener*, 671 F.2d at 145; *Mann*, 561 F.2d at 1286.

reasonable attorney's fees to Heller for this appeal. 42 U.S.C. § 2000e–5(k) (Supp.1991).

**REVERSED** and **REMANDED.**