53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Gustav G. GARBERS, III, Plaintiff-Appellant,
v.
POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, Defendant-Appellee.
 No. 94-15557.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1995.
Decided April 24, 1995.
 
 Before: TANG, SCHROEDER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Gustav Garbers III appeals the magistrate judge's judgment after a bench trial in favor of the Postmaster General. Garbers, a Baptist minister, alleges the magistrate judge erred in (1) ruling that the Postal Service was not required under Title VII to accommodate his requests to attend bi-monthly morning meetings of Baptist ministers, (2) allowing testimony at trial that the Postal Service was experiencing 12% overtime even though the Postal Service failed to disclose the exact percentage of overtime costs in its response to his interrogatories, and (3) ruling that he was not constructively discharged.[1] We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 
 3
 I. Garbers' Title VII Religious Accommodation Claim
 
 
 4
 We analyze Title VII religious accommodation claims under a two-part framework. First, employee Garbers must establish a prima facie case by proving that (1) he had a bona fide religious belief, the practice of which conflicted with his employment duty; (2) he informed the Postal Service of the belief and conflict; and (3) he was subjected, or threatened to be subjected, to an adverse employment practice because of the conflict. See Heller v. EBB Auto Co., 8 F.3d 1433, 1438 (9th Cir.1993); E.E.O.C. v. Townley Engineering & Mfg. Co., 859 F.2d 610, 614 n. 5 (9th Cir.1988), cert. denied, 489 U.S. 1077 (1989). Second, even if Garbers proves his prima facie case, the Postal Service can still prevail if it can show that any accommodation would have resulted in an undue burden. Heller, 8 F.3d at 1438, 1440; Townley, 859 F.2d at 615.
 
 
 5
 We need not reach the first part of the two-part inquiry in this case because the Postal Service has demonstrated that any accommodation would have resulted in an undue burden. We review for clear error the lower court's findings of fact on whether the Postal Service has met its statutory burden to accommodate Garbers' religious belief. See E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir.1989). We conclude the magistrate judge did not clearly err in finding that any accommodation by the Postal Service would have resulted in an undue burden.
 
 
 6
 Although the Postal Service did not attempt to negotiate with Garbers, an employer need not make good-faith efforts to accommodate the employee "if it can show that any accommodation would impose undue hardship." Heller, 8 F.3d at 1440; see also Townley, 859 F.2d at 615 ("If an employer can show that no accommodation was possible without undue hardship, it makes no sense to require that he engage in a futile act"). An accommodation causes an "undue hardship" when it results in more than a de minimis cost to the employer. Heller, 8 F.3d at 1440. In TWA v. Hardison, 97 S.Ct. 2264 (1976), the Supreme Court noted that "paying overtime or not replacing [the employee]" constitutes more than a de minimis cost. See TWA, 97 S.Ct. at 2277 n. 15.
 
 
 7
 Here, the magistrate judge found that replacing Garbers with a replacement worker on Thursday mornings would have incurred overtime costs and that excusing Garbers without replacing him would have caused the Sunnyvale Post Office to fail to meet the needs of its customers. The evidence supports the magistrate judge's findings. The record indicates that Garbers' skills were needed during the morning hours and that the Postal Service could not replace him without incurring overtime costs. The Sunnyvale Post Office was experiencing staff shortages and was using 12% overtime when 3% was normal and 6% was the maximum allowed by the San Francisco division, the office to which Sunnyvale was accountable. Thus, the magistrate judge did not clearly err in finding that the Postal Service did not have to negotiate with Garbers or accommodate Garbers' requests to attend bi-monthly Baptist Minister meetings.
 
 II. Garbers' Evidentiary Claim
 
 8
 Garbers argues that the magistrate judge erred in allowing testimony regarding exact overtime percentages when such percentages were not disclosed by the Postal Service in its answers to Garbers' interrogatories. Garbers' argument is meritless.
 
 
 9
 The lower court's evidentiary rulings " 'are not reversible absent clear abuse of discretion' " and "this court cannot reverse 'absent some prejudice.' " Jauregui v. City of Glendale, 852 F.2d 1128, 1132 (9th Cir.1988). "To show reversible prejudice a party must demonstrate that the allegedly erroneous evidentiary ruling more probably than not was the cause of the result reached by the court." Id. at 1133 (citation omitted).
 
 
 10
 Garbers cannot show that admitting the exact overtime percentages "more probably than not was the cause of the result reached by the court." Jauregui, 852 F.2d at 1133. Here, the magistrate judge relied upon TWA v. Hardison for the proposition that any overtime costs constitute undue hardship. Thus, the exact percentage of the overtime costs was not important to the magistrate judge's holding.
 
 
 11
 Moreover, the Postal Service acknowledged in its answers to Garbers' interrogatories that substantial overtime costs played a role in why it denied Garbers' requests for leave. In Defendant's Supplemental Response to Plaintiff's Second Set of Interrogatories (Supplemental Response), the Postal Service gave the following answer:
 
 INTERROGATORY NO. 5:
 
 12
 If you allege or contend that cost is a factor in requiring the plaintiff to work such hours, please detail the costs which would be incurred by accommodating the plaintiff.
 
 SUPPLEMENTAL RESPONSE:
 
 13
 ... The undue hardship to defendant was having to bring in another employee to perform plaintiff's tasks or, in light of the significant shortage of staff, not having the work performed. Because of the substantial overtime being paid by the Postal Service during this time period, requiring other employees to do plaintiff's work during his absence would only serve to increase the overtime burden on defendant.
 
 
 14
 Although the Postal Service did not give the exact percentage, it did state that the overtime costs being paid were "substantial." There was thus no surprise at trial when the Postal Service brought up the issue of overtime costs and estimated them to be 12%.
 
 
 15
 Finally, Garbers had access to the actual documents showing the amount of overtime costs to the Postal Service for the dates in question. The documents appeared as Exhibit 15 to the EEO Investigator's report, and this report was sent to Garbers and his attorney. Moreover, the documents were attached to the Postmaster General's Motion for Summary Judgment. Thus, Garbers and his attorney had ample opportunity to figure out the costs of overtime prior to trial.
 
 III. Garbers' Constructive Discharge Claim
 
 16
 "A constructive discharge occurs when, looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.' " Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir.1987). Here, there is no evidence whatsoever of intolerable and discriminatory working conditions.
 
 
 17
 Garbers' argument essentially is that the Postal Service's failure to accommodate his requests for leave constitutes a constructive discharge. He argues he was constructively discharged because "[n]othing was done to obtain verification of his needs or consultations with him or the union to discuss alternative solutions." [Appellant's Reply Brief, at 5]. Not accommodating Garbers' requests to attend bi-monthly Baptist Minister meetings, however, is a far cry from "intolerable and discriminatory working conditions." The magistrate judge did not err in holding there was no constructive discharge.
 
 CONCLUSION
 
 18
 We find that the magistrate judge did not clearly err in concluding that the Postal Service did not have to accommodate Garbers under Title VII, since any accommodation would have resulted in an undue burden. We also find that the magistrate judge did not abuse its discretion in allowing testimony at trial regarding the exact overtime percentages and did not err in ruling that Garbers was not constructively discharged.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Garbers also fleetingly raises the claim that the district court failed to take an adverse inference against the Postal Service because the Service destroyed documents prior to trial. Garbers' brief, however, simply mentions this issue without ever addressing it again. Moreover, neither the magistrate judge's opinion nor Garbers' reply brief mentions this issue. We thus conclude that Garbers abandoned this claim