144 F.3d 1225
 76 Fair Empl.Prac.Cas. (BNA) 1846,
73 Empl. Prac. Dec. P 45,441,
98 Cal. Daily Op. Serv. 3940
Lisette BALINT, Plaintiff-Appellant,
v.
CARSON CITY, NEVADA, a consolidated municipality; Ron
Banister, in his official capacity only as Carson City
Sheriff; Kay Bennett, Tom Tatro, Janice Ayres, Greg Smith
in their official capacities only as Board of Supervisors,
Carson City, Nevada, Defendants-Appellees.
 No. 96-17342.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1997.
Decided May 26, 1998.
 
 1
 John N. Schroeder, Reno, Nevada, for plaintiff-appellant.
 
 
 2
 Mark Forsberg, Deputy District Attorney, Carson City, Nevada, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Nevada; Howard D. McKibben, District Judge, Presiding. D.C. No. CV-N-96-00141-HDM.
 
 
 4
 Before: WIGGINS, Senior Circuit Judge, KLEINFELD, Circuit Judge, and WILSON, District Judge*
 
 WILSON, District Judge:
 
 5
 Lisette Balint ("Balint") appeals from the District Court's grant of summary judgment in favor of the Defendants. The District Court held that Title VII did not require the Department to modify its seniority-based shift bidding system to accommodate Balint's religious needs. For the reasons stated below, we affirm the judgment of the District Court.
 
 I. FACTS
 
 6
 Balint is a member of the Worldwide Church of God ("the Church"). A central tenet of the Church is the strict observance of the Sabbath from sundown Friday to sundown Saturday. The Church proscribes all forms of secular work during the Sabbath observance.
 
 
 7
 In February 1995, Balint was offered a position in the detention section of the Carson City Sheriff's Department ("the Department"). Balint had originally applied for a position with the Department in 1993. In her original application, in the section entitled "check type(s) of work you will accept," Balint checked every box, indicating that she was willing to work swing-shift, graveyard, weekends and holidays. Her application does not mention any religious or other objections to certain shifts.
 
 
 8
 In mid-March, Balint completed the requisite physical, psychological and drug testing and was told to report to work for a swing shift on Friday, March 31, 1995. At that time, she informed the Department that she could not work during her Sabbath and requested that her schedule be adjusted to accommodate her religious practice, On March 22, 1995, Lieutenant Dimit, the head of the detention department, informed her that there could be no accommodation. Balint then withdrew her application with the Department.
 
 
 9
 Carson City deputy sheriffs are scheduled by a bid system. Every six months, the twelve or thirteen deputies assigned to the jail bid for shifts in order of seniority. A deputy cannot bid for the same shift he or she is currently working. There is only one deputy with both Saturday and Sunday off. This system is a longstanding practice of the Department, although not the subject of any written agreement. Similarly, although deputies are permitted to trade shifts on an ad hoc basis, there is an unwritten rule prohibiting deputies from trading shifts on a regular basis.
 
 
 10
 Balint filed an action against Carson City, Ron Banister, the Carson City Sheriff, and four members of the Carson City Board of Supervisors alleging that Carson City had engaged in religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e)(1) and the Nevada state anti-discrimination statute. She also alleged that the defendants were negligent in supervising Lt. Dimit by allowing him to violate the anti-discrimination statutes. After permitting limited discovery solely on the question of "whether the Carson City Sheriff's department has a neutral shift-bidding system in effect," the district court granted Defendants' motion for summary judgment. The court first held that Balint had established a prima facie case of discrimination. It went on to hold that in light of the Department's bona fide shift bidding system, any accommodation of Balint's religious practices would constitute an undue hardship as a matter of law.
 
 II. STANDARD OF REVIEW
 
 11
 We review grants of summary judgment de novo. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 III. ANALYSIS
 
 12
 Title VII prohibits employers from discriminating on the basis of religion. Heller v. EBB Auto Co., 8 F.3d 1433, 1437 (9th Cir.1993). Religion is defined broadly to include "all aspects of religious observance and practice." 42 U.S.C. § 2000e-2(a)(1). An employer has a duty to accommodate a current or prospective employee's religious practices unless the accommodation would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). It is an unlawful employment practice "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). It is not, however, an unlawful employment practice for an employer to apply "different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system ... provided that such differences are not the result of any intention to discriminate because of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(h).
 
 
 13
 Title VII religious discrimination claims are analyzed according to a two-part test. First, the employee has the burden of establishing a prima facie case of discrimination. Heller, 8 F.3d at 1438. The prima facie case has three elements: (1) the employee had a bona fide religious belief, the practice of which conflicted with a duty of her employment; (2) she informed her employer of the belief and the conflict; (3) the employee was threatened with or subjected to discriminatory treatment because of her inability to fulfill her job responsibilities. Id. For purposes of this appeal, Defendants concede that Balint was denied employment because of her refusal to work on her Sabbath. We can therefore assume that she has established a prima facie case of discrimination.
 
 
 14
 If the employee establishes a prima facie case, the burden shifts to the employer to establish that it either initiated good faith efforts to accommodate the employee or that any accommodation would create undue hardship on the employer. EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir.1988). If any attempt at accommodation would be futile, then there is no need to show a good faith effort to accommodate the employee. Id. Defendants also concede, for purposes of this appeal, that they took no steps to accommodate Balint's religious practices.
 
 
 15
 Defendants argue that, under Hardison, when there is a legitimate seniority system, enacted without discriminatory intent, any attempt to accommodate Balint would, as a matter of law, cause undue hardship. We agree. Like Balint, Hardison was a member of the Worldwide Church of God. 432 U.S. at 65-68, 97 S.Ct. 2264. His position as a stores clerk at TWA's Kansas City base required 24-hour coverage. Id. Shifts were assigned by a seniority system, and Hardison did not have sufficient seniority to bid for a shift that permitted him to avoid working on Saturdays. Id. Hardison was fired for insubordination after he refused to report for work on Saturdays. Id. at 69, 97 S.Ct. 2264. The Court held that altering the seniority system to accommodate religious beliefs would place an undue hardship on TWA by depriving more senior personnel seniority rights that had been obtained through the collective bargaining process. Id. at 81, 97 S.Ct. 2264. Relying on 42 U.S.C. § 2000e-2(h), the Court held that "absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice, even if the system has some discriminatory consequences." Id. at 84, 97 S.Ct. 2264.
 
 
 16
 It is undisputed that Department had in place a bona fide seniority-based system of assigning shifts. Moreover, Plaintiff cites to no evidence of a discriminatory motive behind either the existence or the application of the Department's shift-bidding system. To the contrary, the evidence shows that the system was designed to minimize the burden of weekend work in four ways. First, those employees with the most seniority could bid for the least burdensome shifts--including the one weekday-only shift. Second, each employee was required to change shifts every six months, thus, no employee had an exclusive franchise on the best shift or was eternally relegated to the worst. Third, the shifts were designed to maximize the workforce during the weekends, when the Department was busiest, while ensuring that each officer had two consecutive days off for adequate rest. Finally, the shifts were designed to give as many officers as possible at least one weekend day off. We conclude that, as in Hardison, this system is a "neutral way of minimizing the number of occasions when employee[s] must work on a day [they] would prefer to have off." Hardison, 432 U.S. at 78, 97 S.Ct. 2264.
 
 
 17
 Because the Department had in place a nondiscriminatory seniority-based system for assigning shifts, it had no duty to accommodate Balint, even if such accommodation would have no more than a de minimis impact. Id. at 84, 97 S.Ct. 2264; 42 U.S.C. § 2000e-2(h) (not an unlawful employment practice to apply different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system where the differences are not the result of an intent to discriminate on the basis of race, color, religion, sex or national origin). We have, in prior cases, examined whether the burden of accommodation would have been more than de minimis. In those cases, however, the seniority system was not applied consistently, see EEOC v. Hacienda Hotel, 881 F.2d 1504, 1513 (9th Cir.1989), or shifts were not allotted according to a bona fide seniority system that protected senior employees from working undesirable shifts. Opuku-Boateng v. California, 95 F.3d 1461, 1470 (9th Cir.1996).
 
 
 18
 Balint's reliance on Opuku-Boateng is misplaced. Opuku-Boateng involved a Seventh-Day Adventist's request to be excused from working as a state Plant Quarantine Inspector during his Sabbath--sundown Friday to sundown Saturday. 95 F.3d at 1465. The inspection station required the inspectors to work varying schedules to avoid the possibility of collusion between the inspector and those being inspected. Id. After a bench trial, the district court found that allowing Opuku-Boateng his Sabbath would have a "discriminatory impact on other employees and more than a de minimis impact on the operation of the [inspection] station." Id. at 1469. This court disagreed, citing the possibility of voluntary shift trades or requiring Opuku-Boateng to work Sundays and non-religious holidays in exchange for accommodating his religious needs. Id. at 1474.
 
 
 19
 Opuku-Boateng does not apply in cases, like the instant case, where shifts are allocated according to seniority. In Opuku-Boateng, each employee was required to work the same number of undesirable weekend, holiday and night shifts. Id. Opuku-Boateng reasoned, and we agreed, that the State's failure to even attempt to accommodate his religious needs violated Title VII, where Opuku-Boateng was willing to work his share of undesirable shifts that did not conflict with his Sabbath and no other employee's seniority rights were affected by this accommodation. Id. at 1473. In contrast, Balint's request requires the Department to bypass its existing seniority system--forcing a more senior person to work during four of the most undesirable shifts during the week.
 
 IV. CONCLUSION
 
 20
 We hold that an employer is not required to alter an existing, bona fide seniority-based shift-bidding system to accommodate an employee's religious needs.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation