319 F.3d 498
 Gregory LAWSON, Plaintiff-Appellant,
v.
State of WASHINGTON, The Washington State Patrol; Annette M. Sandberg, in her official and individual capacity; Lowell M. Porter, in his official and individual capacity, Defendants-Appellees.
 No. 00-35458.
 United States Court of Appeals, Ninth Circuit.
 Filed February 7, 2003.
 
 Before: REAVLEY,* B. FLETCHER and TALLMAN, Circuit Judges.
 
 ORDER
 
 1
 The Order filed on January 3, 2003, denying the petition for rehearing en banc, is hereby amended to include Judge Berzon's attached dissent from the denial of rehearing en banc. This order and Judge Berzon's dissent shall be published.
 
 
 2
 Judge Tallman has voted to deny the petition for rehearing en banc and Judge Reavley has so recommended. Judge B. Fletcher has recommended granting the petition for rehearing en banc.
 
 
 3
 The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.
 
 
 4
 The petition for rehearing en banc is therefore denied.
 
 
 5
 The mandate shall issue in due course.
 
 
 6
 BERZON, Circuit Judge, with whom PREGERSON, REINHARDT, TASHIMA, and PAEZ, Circuit Judges, join, dissenting from the denial of rehearing en banc:
 
 
 7
 The panel majority in this case proceeds on the premise that an employee never has a cause of action for religious discrimination under Title VII, 42 U.S.C. § 2000e et seq., for failure to accommodate religious observance, unless the employee first refuses because of his or her religious beliefs to comply with an applicable rule and is thereafter fired or disciplined or specifically threatened with firing or discipline. This holding is squarely contrary to Supreme Court precedent, to the EEOC's consistent interpretation of the statute, and to good sense. By failing to take the case en banc, this court has undermined the protections against religious discrimination provided in Title VII of the Civil Rights Act of 1964.
 
 
 8
 I. The Failure to Accommodate is Itself a Title VII Violation
 
 A. 42 U.S.C. § 2000e(j)
 
 9
 Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Unlike the later-enacted Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., Title VII does not explicitly define discrimination as a failure to accommodate. See 42 U.S.C. § 12112(b)(5).[1] Instead, in a provision added in 1972, Title VII defines religion to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j) [§ 701(j) of Title VII of the Civil Rights Act of 1964] (emphasis added).
 
 
 10
 In Trans World Airlines v. Hardison, 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Court briefly reviewed the history of this amendment to the statute, explaining that it was enacted to resolve controversies concerning whether, under Title VII as originally enacted, the obligation not to discriminate on the basis of religion included an obligation to accommodate religious observance. Id. at 72-73, 75 n. 9, 97 S.Ct. 2264. Hardison then concluded that "[t]he intent and effect of this definition was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." Id. at 74, 97 S.Ct. 2264. Reiterating this conclusion, the Hardison Court further observed that: "the employer's statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship, is clear ...." Id. at 75, 97 S.Ct. 2264.
 
 
 11
 Hardison thus indicates that accommodation is a statutory obligation and that failing to accommodate is itself an unlawful employment practice, without regard to whether another employment consequence, other than the failure to accommodate, is visited upon the employee. In this regard, Hardison is fully consistent with the indication of congressional intent reflected in the legislative history underlying the adoption of § 2000e(j). The amendment was added to ratify the EEOC's 1967 Guidelines, which required employers "to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business." 29 C.F.R. § 1605.1 (1968). The Section-By-Section Analysis of the Equal Employment Opportunity Act of 1972 states that the "[f]ailure to make such accommodation would be unlawful unless an employer can demonstrate that he cannot reasonably accommodate such beliefs, practices, or observances without undue hardship on the conduct of his business." 118 Cong. Rec. 7166 (1972); see also The Equal Employment Opportunity Act of 1972, The Bureau of National Affairs Operation Manual 44 (1973). Again, the legislative history indicates that the "failure to make such accommodation" absent undue hardship is itself "unlawful." There is no suggestion that such failure is unlawful only if the employee is also disciplined, discharged, or threatened with such actions.
 
 B. EEOC Guidelines
 
 12
 The EEOC has consistently applied the principle enunciated in Hardison — that failure to accommodate is itself discrimination in terms and conditions of employment, and therefore an unlawful employment practice. The EEOC's Guidelines specify that it is "unlawful ... for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee," absent a showing that such an accommodation would result in an undue hardship. 29 C.F.R. § 1605.2(b)(1); see also § 1605.2(c)(1) ("After an employee or prospective employee notifies the employer ... of his or her need for a religious accommodation, the employer ... has an obligation to reasonably accommodate the individual's religious practices.") Nothing in the Guidelines suggests that an employer who fails to accommodate an employee only violates Title VII if the employee is also disciplined, or discharged, or threatened with discipline or discharge.
 
 
 13
 These administrative agency guidelines deserve substantial deference. EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 257, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991).[2] An earlier version of the Guidelines at issue was explicitly ratified by Congress when it passed Section 701(j) of Title VII in 1972. See 188 Cong. Rec. 7167 (1972); see also Hardison, 432 U.S. at 63, 69, 77 n. 11, 97 S.Ct. 2264. The Guidelines have remained virtually unchanged in the last thirty years. Moreover, and critically, the current version of the Guidelines cites Hardison, accurately, as supporting the EEOC's construction of Title VII's religious accommodation provisions. Indeed, the pertinent language of the Guidelines and of Hardison is virtually identical.
 
 
 14
 In addition to the Guidelines, the EEOC's Compliance Manual states that a failure to provide a religious accommodation is "a separate and distinct theory of discrimination" under Title VII. EEOC Compliance Manual § 628.4 at 4183 (2002). The EEOC "takes the position that once an employee notifies the employer... of his/her need for a religious accommodation, he/she has satisfied his/her obligations under Title VII." See id. § 628.5 at 4185; see also 45 Fed.Reg. 72610 (Oct. 31, 1980). Thus, there is no need for an employee to be discharged, nor need any other separate adverse employment action occur. Instead, the failure to accommodate religious observance is, without more, a Title VII violation, absent a showing of undue hardship. See EEOC Compliance Manual § 628.5 at 4187.
 
 
 15
 Indeed, the EEOC Compliance Manual contains a hypothetical scenario very similar to Lawson's situation: In the hypothetical, an employee notifies his employer of the need for a scheduling accommodation because of his religious beliefs. Id. § 628.5 at 4186. The employer does not offer the employee any accommodation, and the employee resigns. The EEOC concludes that if an accommodation could have been made without undue hardship, then the employer is in violation of Title VII.[3] Id.
 
 
 16
 This interpretation fully comports with the statute's overall structure and purpose. Title VII generally forbids employers not only from discharging or refusing to hire employees for discriminatory reasons, but also from "otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Thus, imposing discriminatory terms can violate the statute, without more.[4] And, since the statute defines "religion" as including a failure to accommodate, an employer who unreasonably fails to accommodate religious practice absent undue hardship discriminates on the basis of religion in setting the terms of employment. To require employees to wait for other unfavorable employment actions before they can take steps to protect their interests has no basis in the statute. Nor does mandating that employees must risk financial hardship, negative employment histories, and the anxiety of waiting for a discharge or other discipline to occur before their statutory right to religious accommodation can be vindicated. See EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 614 n. 5 (9th Cir.1988) ("An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy.") (citing Am. Postal Workers Union v. Postmaster General, 781 F.2d 772, 774-75 (9th Cir.1986)).
 
 
 17
 The short of the matter is that under Title VII, employees do not have to choose between their religious beliefs and employment. Rather, an employee whose employer refuses accommodation has a cause of action, without more, for prospective relief requiring accommodation or damages for past failure to accommodate. That the employee resigned when accommodation was refused might limit the relief available but does not preclude liability. The panel majority seriously erred in concluding otherwise.
 
 C. Case Law
 
 18
 The panel majority's opinion relied on the test set forth in Heller v. EBB Auto Co., 8 F.3d 1433 (9th Cir.1993). The three-prong Heller test for establishing a prima facie case of religious discrimination under Title VII requires that an employee:
 
 
 19
 (1) ... had a bona fide religious belief, the practice of which conflicted with his employment duties ...; (2) he informed [his employer] of his beliefs and the conflict; and (3) the [employer] "threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements."
 
 
 20
 Lawson v. Washington, 296 F.3d 799, 804 (9th Cir.2002) (quoting Heller, 8 F.3d at 1438).[5] Heller and the cases upon which it relies incorporate as the third prong of a prima facie case the requirement that the employee show the threat or actuality of discipline or discharge for failure to meet job requirements. See Heller, 8 F.3d at 1438. Other circuits have articulated this requirement as well. See, e.g., EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados, 279 F.3d 49, 55 (1st Cir.2002) (citing EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir.1996)); Virts v. Consol. Freightways Corp., 285 F.3d 508, 516 (6th Cir.2002); Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 843 (D.C.Cir.2001); Shelton v. Univ. of Med. & Dentistry, 223 F.3d 220, 224 (3d Cir.2000).[6]
 
 
 21
 I am unaware of any published opinion in this circuit or any other (prior to this case), however, that has actually held that a failure to accommodate, absent a showing of undue hardship, does not constitute a Title VII violation in and of itself.[7] The upshot is that the Heller rule, and similar rules in other circuits, have been reflexively repeated, yet their basis in the statute has not been explained. Given Hardison, the EEOC's consistent position, and the absence of any statutory basis for the Heller third prong, I think this case should have been heard en banc to make clear that failure to accommodate religious practices absent undue hardship is, without more, an unlawful employment practice under Title VII. Applying that standard, Lawson's case should go forward whether or not he was constructively discharged.
 
 
 22
 II. Threat of Discriminatory Treatment or Discharge
 
 
 23
 I note also that even under Heller, Lawson has made out a prima facie case of religious discrimination sufficient to over come a summary judgment motion. All Lawson had to show under the Heller test was that he was threatened with discipline or discharge. Heller, 8 F.3d at 1438; see also Opuku-Boateng v. California, 95 F.3d 1461, 1467 n. 9 (9th Cir.1996); Townley, 859 F.2d at 614 n. 5 ("The threat of discharge (or of other adverse employment practices) is a sufficient penalty.") (citing Burns v. Southern Pac. Transp. Co., 589 F.2d 403, 405 (9th Cir.1978)) (emphasis in original). Lawson met this burden.
 
 
 24
 By holding otherwise, the panel majority requires employees to disregard or discount their employers' directives. If an employer tells an employee what he or she must do, the threat that an adverse action may be visited on the employee for failure to comply is implicit in the employment relationship; insubordination is always a potential basis for discharge or discipline. When that implicit threat is made explicit, albeit in general terms in an employee manual, the message is all the more clear: Employees must do as they are told or suffer the consequences. Nothing in our prior case law encourages insubordination by requiring that employees flaunt the rules and actually suffer discipline before they can bring suit to challenge a failure to accommodate their religious practices.
 
 III. Constructive Discharge
 
 25
 Finally, Judge B. Fletcher's dissent from the panel majority well articulates why Lawson has made a sufficient case of constructive discharge to overcome a summary judgment motion. To make out a case of constructive discharge, an employee must demonstrate that a working environment is "so intolerable and discriminatory as to justify a reasonable employee's decision [to leave]." Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir.2000) (quoting Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir.1987)). Generally, this inquiry is a question left to the trier of fact. See Watson, 823 F.2d at 361.
 
 
 26
 A reasonable trier of fact could surely find that conditions were so intolerable that Lawson had no choice but to resign. His religious beliefs required him to decline to follow mandatory rules imposed on him, and he had been told in no uncertain terms that no accommodation could be made.
 
 
 27
 The forebears of many Americans came to this country, leaving their homelands, not just their employment, behind, in order to practice their religion in accord with their beliefs. As a nation, we recognize conscientious objection from military service because we understand that people cannot be expected to serve in combat against their most deeply held beliefs, even in the face of a threat to national security. To hold as a matter of law that a reasonable person would not resign from his job in order to avoid behaving in a manner that he believes offensive to his God is inconsistent with our traditions.
 
 
 28
 * * * * * *
 
 
 29
 For all these reasons, this case should have been reheard by this court en banc. I respectfully dissent from the denial of the petition for rehearing en banc.
 
 
 
 Notes:
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 42 U.S.C. § 12112(b)(5) provides that:
 [T]he term "discriminate" includes ... (A) not making reasonable accommodations to the known physical or mental limitation of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.
 
 Id.
 
 
 
 [2]
 The level of deference given to EEOC Guidelines "depends on the EEOC's thoroughness of consideration, validity of its reasoning, consistency with earlier and later pronouncements, and power of persuasion."Dawavendewa v. Salt River Project Agric. Improvement & Power Dist., 154 F.3d 1117, 1121 (9th Cir.1998) (citing Arabian Am. Oil Co., 499 U.S. at 256, 111 S.Ct. 1227); but see Arabian Am. Oil Co., 499 U.S. at 259-60, 111 S.Ct. 1227, (Scalia, J., concurring in part and concurring in the judgment) (arguing that Chevron deference applies just as much to EEOC guidelines as to any other decision by an administrative agency).
 
 
 [3]
 In the hypothetical, the employee claims that he was constructively discharged because of his religionSee id. The EEOC analysis does not address whether the resignation was a constructive discharge. Instead, the analysis relies solely on the independent duty to accommodate an employee's religious needs. See id.
 
 
 [4]
 For example, in hostile work environment harassment cases, it is the harassment itself that is an adverse term or condition of employment, without regard to any separate adverse employment actionSee generally Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
 
 
 [5]
 There is a second part to this test, requiring that, if the employee makes out the three-prong prima facie case, the employer must "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship."Lawson, 296 F.3d at 804 (quoting Heller, 8 F.3d at 1438.) This second prong is not relevant at this stage of this litigation, as both the district court and this court concluded that Lawson did not make out a prima facie case.
 
 
 [6]
 I note that one explanation for theHeller rule may be that it is only articulating the requirements for establishing a prima facie case, much like McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny, not describing the ultimate burden of proof the employee bears. See Costa v. Desert Palace, Inc., 299 F.3d 838, 854-56 (9th Cir.2002) (en banc), cert. granted, ___ U.S. ___, 123 S.Ct. 816, 154 L.Ed.2d 766 (2003). If that is the case (as the language in the opinions indicate), then the third prong may be necessary if the employee is seeking to shift the burden of proof to the employer to disprove the accommodation factor, but not otherwise. Here, Lawson has no need to shift the burden of proof to the State of Washington with regard to the failure to accommodate, as it is undisputed that the employer initiated no effort to accommodate Lawson's religious practices despite awareness of the conflict.
 
 
 [7]
 The Fourth Circuit in an unpublished disposition held that in order to make a claim for religious discrimination under Title VII, an employee needed to establish an adverse employment actionSee Ali v. Alamo Rent-A-Car, Inc., 8 Fed.Appx. 156 (4th Cir.2001).